RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0214P (6th Cir.)
File Name: 03a0214p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

DEBBRA LEPLEY, Individually
and as the Administratrix of
the Estate of Jack Showalter,
Jr.,

    *Plaintiff-Appellant,*

    *v.*

HARTFORD ACCIDENT AND
INDEMNITY COMPANY, and
ST. PAUL SURPLUS LINES
INSURANCE COMPANY,

    *Defendants-Appellees.*

No. 01-4304

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 01-00535—James Gwin, District Judge.

Argued: March 14, 2003

Decided and Filed: June 30, 2003

Before: MOORE and GIBBONS, Circuit Judges; COHN,
Senior District Judge.[*]

_____

[*] The Honorable Avern Cohn, Senior United States District Judge for
the Eastern District of Michigan, sitting by designation.

---

**COUNSEL**

**ARGUED:** Kenneth L. Gibson, WEICK, GIBSON &
LOWRY, Cuyahoga Falls, Ohio, for Appellant. Timothy
John Fitzgerald, GALLAGHER, SHARP, FULTON &
NORMAN, Cleveland, Ohio, David J. Fagnilli, DAVIS &
YOUNG, Cleveland, Ohio, for Appellees. **ON BRIEF:**
Kenneth L. Gibson, WEICK, GIBSON & LOWRY,
Cuyahoga Falls, Ohio, Stanley P. Aronson, ARONSON &
ASSOCIATES, Akron, Ohio, for Appellant. Larry C.
Greathouse, Alton L. Stephens, Jr., GALLAGHER, SHARP,
FULTON & NORMAN, Cleveland, Ohio, David J. Fagnilli,
DAVIS & YOUNG, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-
appellant Debbra Lepley brought suit against defendants-
appellees Hartford Accident and Indemnity Company
(Hartford) and St. Paul Surplus Lines Insurance Company (St.
Paul) seeking a declaratory judgment that commercial liability
insurance policies issued to her deceased husband's employer
provided uninsured/underinsured (UM/UIM) motorist
coverage for his injuries in a motorcycle accident. Lepley
also sought monetary recovery under the policies. The district
court granted defendants-appellees' motions for summary
judgment on the grounds that Lepley was not entitled to
coverage because she failed to satisfy the policies'
requirements of providing prompt notice of her claim and
protecting the appellees' rights to subrogation. For the
reasons set forth below, we affirm the judgment of the district
court.

## I.

On September 10, 1986, Paula Rosvanis backed her car out of an alley, failed to yield, and hit Jack Showalter on his motorcycle. On September 15, 1986, Showalter died of injuries sustained in the accident. Showalter was survived by his wife Debbra (now Debbra Lepley) and two daughters. After Showalter's death, Lepley sued Rosvanis. Rosvanis and her insurer settled with Lepley for $100,000.00. The Probate Court of Marion County, Ohio, approved the settlement on August 4, 1987.

At the time of the accident and his death, Showalter was employed with the Stahl Metal Company, a subsidiary of the Scott & Fetzer Company. Showalter, however, was not acting in the scope of his employment at the time of the accident. Hartford issued Scott & Fetzer a commercial general liability insurance policy, Policy No. 45 CSE H15456E, with limits of liability of $1,000,000.00 for the policy period of December 1, 1985, to December 1, 1986. In addition, St. Paul insured Scott & Fetzer under an umbrella excess policy, Policy No. LCO-55-16673, with excess liability limits of $2,000,000.00 for the policy period of December 1, 1985, to December 1, 1986.

Neither Hartford nor St. Paul received notice of the accident or the subsequent claim against and settlement with Rosvanis prior to 2001. Hartford first received notice of the claim on March 7, 2001, the date Lepley filed this action, more than fourteen years after the accident.

On September 4, 2001, defendants-appellees filed motions for summary judgment. On that same date Lepley moved for partial summary judgment against both Hartford and St. Paul. The district court granted summary judgment in favor of defendants-appellees and denied Lepley's motions for partial summary judgment on November 9, 2001. The district court found that Lepley did not comply with the policies' notice

provisions and caused Hartford and St. Paul to lose their subrogation rights. This timely appeal followed.

## II.

This court reviews *de novo* a district court's grant of a motion for summary judgment. *Braithwaite v. Timken Co.*, 258 F.3d 488, 492-93 (6th Cir. 2001). This court reviews an order denying summary judgment on the grounds that there is a genuine issue of material fact for an abuse of discretion; however, if the denial is based on purely legal grounds, then review of the denial is *de novo*. *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 363 (6th Cir. 1993)). When reviewing the record, all inferences are to be drawn in the light most favorable to the non-moving party. *Braithwaite*, 258 F.3d at 493 (citing *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245-46 (6th Cir. 1997)). However, a party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite*, 258 F.3d at 493 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998)) (citation omitted).

On appeal Lepley argues that the district court erred in finding that: (1) the notice and subrogation provisions apply even though UM/UIM coverage was imposed as a matter of law, and (2) Lepley is not entitled to coverage because she failed to comply with the notice and subrogation provisions. "[F]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting

parties." *Ross v. Farmers Ins. Group of Cos.*, 695 N.E.2d 732, 738 (Ohio 1998). Ohio Revised Code § 3937.18 was amended by H.B. 261, which took effect September 3, 1997. Because the relevant policy periods were December 1, 1985 through December 1, 1986, the former Ohio Revised Code § 3937.18 applies. This version of § 3937.18 provides that an insurer must offer UM/UIM coverage in an amount equivalent to the automobile liability coverage whenever an automobile liability or motor vehicle liability policy is offered.[1] "If UM/UIM coverage is not offered, it becomes part of the policy by operation of law." *See Davidson v. Motorists Mut. Ins. Co.*, 744 N.E.2d 713, 715 (Ohio 2001). It is undisputed

---

[1]The statute states, in pertinent part:

(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:

(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by a person under the policy.
* * *
(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage.

Ohio Rev. Code § 3937.18.

that the policies at issue fall within the meaning of automobile liability or motor vehicle liability policies under Ohio law. *See Selander v. Erie Ins. Group*, 709 N.E.2d 1161, 1163 (Ohio 1999) (noting that "[w]here motor vehicle coverage is provided, even in limited form, uninsured/underinsured coverage must be provided.")

### A.

Lepley first argues that the district court erred in finding that she was bound by the conditions contained in the Hartford and St. Paul policies because the UM/UIM coverage under those policies is imposed as a matter of law.[2] Specifically, Lepley contends that all conditions including the notice and subrogation provisions contained in the Hartford and St. Paul policies do not apply to UM/UIM motorist coverage that arises through operation of law. Relying in part on *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 710 N.E.2d 1116 (Ohio 1999), Lepley claims that the intent of the parties expressed in the more limited coverage provided in the policy cannot be extrapolated to UM/UIM coverage imposed by operation of law. In *Scott-Pontzer*, the Ohio Supreme Court addressed whether an exclusion could be applied to limit underinsured motorist coverage that arose by operation of law. Citing *Demetry v. Kim*, 595 N.E.2d 997 (Ohio 1991), the court concluded that the exclusion, which was intended to apply solely to liability coverage, did not apply to the implied underinsured motorist coverage. *Scott-Pontzer*, 710 N.E.2d at 1120.

---

[2]Hartford contends that because the Hartford policy makes express provision for UM/UIM coverage, the UM/UIM coverage itself is not implied by operation of law, only the limit of such coverage is imposed by operation of law. St. Paul does not dispute that UM/UIM coverage is imposed by operation of law with regard to the St. Paul policy. Because we find that the conditions at issue are applicable even if UM/UIM coverage is implied by operation of law, we need not reach Hartford's argument that the UM/UIM coverage in its policy is not imposed by operation of law.

Unlike *Scott-Pontzer*, which dealt with a liability exclusion, the issue in the instant case is whether a condition precedent is applicable to UM/UIM coverage implied by law. As explained by the district court and in an Ohio Court of Appeals' decision, this is an important distinction. *See Luckenbill v. Midwestern Indem. Co.*, 758 N.E.2d 301, 304-05 (Ohio Ct. App. 2001). "Logically, parties to an insurance policy can never negotiate exclusions to underinsured motorist coverage that they never envisioned would exist. However, the parties to an insurance policy *can* negotiate conditions precedent that would apply to any and all coverages provided under the policy." *Heiney v. The Hartford*, No. 01AP-1100, 2002 WL 1625571, at * 3 (Ohio Ct. App. July 23, 2002). Therefore, such general conditions apply to UM/UIM coverage despite the fact that such coverage arises as a matter of law. *Id.*

Lepley argues that the distinction between exclusions and conditions precedent is a distinction without a difference. As the district court noted, however, the Ohio Supreme Court's decision in *Duriak v. Globe American Casualty Insurance Co.*, 502 N.E.2d 620 (Ohio 1986) *rev'd on other grounds, Miller v. Progressive Casualty Insurance Co.*, 635 N.E.2d 317 (Ohio 1994), supports the validity of this distinction. In *Duriak*, the Ohio Supreme Court found that while the excess policy included uninsured motorist coverage imposed as a matter of law, the insured was required to comply with a condition precedent to such coverage: "[T]he proviso in the policy predicating recovery upon compliance with the primary insurance coverage is effective to preclude recovery from the [excess] policy even if we insert uninsured motorist coverage into the policy as a matter of law." *Id.* at 623.

Lepley claims that reliance on *Duriak* is misplaced because the basis for *Duriak*'s holding has been "destroyed" by later Ohio Supreme Court opinions. However, in *Heiney* an Ohio appeals court disagreed as is evident by its recent reliance on *Duriak* in finding that conditions precedent apply to coverage imposed by operation of law. The *Heiney* court discussed the

issue of conditions precedent in relation to the Ohio Supreme Court's opinion in *Duriak*. According to the *Heiney* court:

> The broad application of *conditions precedent* to all coverages provided under an insurance policy, including coverages implied by law, is demonstrated by *Duriak v. Globe American Cas. Co.*, 502 N.E.2d 620 (1986) overruled on other grounds by *Miller v. Progressive Cas. Ins. Co.*, 635 N.E.2d 317 (1994). In *Duriak*, the plaintiff was covered under two insurance policies– a primary policy, which included uninsured motorist coverage, and an excess policy, which did not include uninsured motorist coverage. The primary policy required all actions against the insurer be commenced within one year. The excess policy stated that coverage under that policy was conditioned upon compliance with the primary policy. The plaintiff failed to commence her action against the primary insurer for uninsured motorist coverage within the one-year period required by the primary policy. Although uninsured motorist coverage was read into the excess policy by operation of law, the plaintiff was precluded from recovering under the excess policy because the plaintiff failed to satisfy the general condition precedent of that policy– compliance with the terms of the primary policy.

*Heiney*, 2002 WL 1625571, at * 3.

Although the case law is not entirely consistent, the weight of authority from the appellate courts in Ohio holds that conditions precedent apply even when UM/UIM coverage arises by operation of law.[3] For example, in *Chamberlin v.*

---

[3] *See Luckenbill,* 758 N.E.2d at 306 (finding that "when UM/UIM coverage is imposed by operation of law, the insured must satisfy the duties imposed on him by the policy in order to obtain the benefits of the concomitant duty to provide coverage that the law imposes on the insurer"); *Williams v. Allstate Indem. Co.*, No. 19431, 2003 WL 367051, at *2 (Ohio Ct. App. Feb. 21, 2003) (noting that "conditions precedent to

*Williams*, No. S-02-006, 2002 WL 31630714 (Ohio Ct. App. Nov. 22, 2002), the court found that "the fact that UM/UIM coverage arises by operation of law does not relieve the insured of his or her obligation under the contract to comply with the notice and subrogation provisions." *Id.* at *4. Similarly, in *Knox v. Travelers Insurance Co.*, No. 02AP-28, 2002 WL 31819651 (Ohio Ct. App. Dec. 17, 2002), the court held that conditions precedent apply to UIM coverage arising as a matter of law. *Id.* at *3.

Finally, in *Cincinnati Ins. Co. v. McClain*, No. 2001-CA-96, 2002 WL 360424 (Ohio Ct. App. Mar. 8, 2002), the court applied the notice and subrogation provisions even though coverage was implied by operation of law. On appeal, the Supreme Court of Ohio remanded the case to the trial court "to consider whether the insurer was prejudiced" under

---

coverage clearly do apply to insurance imposed by operation of law."); *Lintner v. Midwestern Indem. Co.*, No. CA2002-04-077, 2002 WL 31360645, at *6 (Ohio Ct. App. Oct. 21, 2002) (finding that conditions precedent of prompt notice and preservation of subrogation rights apply even when coverage is imposed as a matter of law); *Woodrich v. Fed. Ins. Co.*, No. 02CA3, 2002 WL 31151603, at *2 (Ohio Ct. App. Sept. 27, 2002) (finding that imposition of UM/UIM coverage by operation of law does not relieve insured of duty to comply with notice or consent provisions in a liability policy); *Houser v. Motorists Ins. Co.*, No. 2-02-02, 2002 WL 1299778, at *7 (Ohio Ct. App. June 4, 2002) (finding that where underinsured motorist coverage was implied by operation of law, settlement of claim without notifying insurer precluded recovery); *Green v. Cincinnati Ins. Co.* No. H-01-018, 2001 WL 1556216, at *5 (Ohio Ct. App. Dec. 7, 2001) ("[e]ven though operation of *Scott-Pontzer* principles result in UIM coverage for this claim, appellant's failure to meet policy preconditions ultimately deny her recovery"). *But see Rohr v. Cincinnati Ins. Co.*, No. 2001CA00237, 2002 WL 491824, at *8 (Ohio Ct. App. Mar. 28, 2002) (finding that conditions and duties imposed by insurance policy did not apply to UM/UIM coverage, which arose by operation of law); *Poulton v. Am. Econ. Ins. Co.*, Nos. 2002-CA-00038 & 2002-CA-00061, 2002 WL 31883646, at *4 (Ohio Ct. App. Dec. 23, 2002) (following *Rohr*); and *Burkhart v. CNA Ins. Co.*, No. 2001CA00265, 2002 WL 316224 (Ohio Ct. App. Feb. 25, 2002), *superceded by statute on other grounds* in *Allen v. Transp. Ins. Co.*, 2002 WL 31656239 (Ohio Ct. App. Nov. 26, 2002).

---

*Ferrando v. Auto-Owners Mutual Insurance Co.*, 781 N.E.2d 927 (Ohio 2002), thereby implicitly recognizing that the appellate court was correct in finding that the notice provision was applicable despite being imposed as a matter of law. *Cincinnati Ins. Co. v. Estate of McClain*, No. 2002-0641, 2003 WL 2004253, at *1 (Ohio May 7, 2003). Accordingly, if an insurance policy specifies general conditions precedent that must be satisfied before an insured is entitled to any coverage, then an insured's failure to comply with those conditions precedent precludes recovery under UM/UIM coverage that arises by operation of law.

Based on the above authority, we find that the "[n]otice and subrogation clauses are valid and enforceable preconditions to an insured's duty to provide underinsured motorist coverage even where UM/UIM coverage arises as a matter of law." *Chamberlin*, 2002 WL 31630714, at *4. Therefore, the fact that Lepley's UM/UIM coverage under the policies arose by operation of law does not relieve her of the obligation to comply with the notice and subrogation provisions set forth in the Hartford and St. Paul policies.

**B.**

Lepley next argues that the district court erred in concluding that she is barred from recovering UIM benefits because she failed to satisfy the policies' requirements of providing prompt notice and of protecting defendants-appellees' subrogation rights. Both the Hartford and St. Paul policies provide that an insured is barred from bringing an action against the insurer if the insured fails to comply with the insured's obligations under the contract. Specifically, the Hartford policy provides: "No action shall lie against the company, unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy . . . ." The St. Paul policy states that "No action shall lie against the Company with respect to any occurrence unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy . . . ."

With regard to notice, the Hartford Policy provides:

> In the event of an occurrence, written notice containing the particulars sufficient to identify the insured and also reasonably obtainable information with respect to time, place and circumstances thereof, and the names and address of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable after knowledge thereof is received at the Corporate Headquarters as shown on the declarations page of this policy.

Similarly, the St. Paul policy states:

> In the event of an occurrence, which appears likely to involve this Policy, written notice containing the particulars sufficient to identify the Insured and also reasonably obtainable information with respect to time, place and circumstances thereof, and the names and address of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

Both policies also contain subrogation provisions. The Hartford policy provides:

> In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery thereof against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

The Hartford policy further states:

> If we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do

everything necessary to secure these rights and must do nothing that would jeopardize them.

The St. Paul policy provides:

> The Company shall be subrogated to the extent of any payment hereunder to all the Insured's rights of recovery therefor; and the Insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure such rights.

Recently, the Ohio Supreme Court specifically discussed the circumstances under which an insurer should be relieved of the obligation to provide coverage when an insured violates the prompt notice and subrogation provisions in policies of insurance. *See Ferrando*, 781 N.E.2d at 927. Pursuant to *Ferrando*, "[w]hen an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice." *Id.* at 945-46. "An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." *Id.* at 946. Furthermore, "when an insurer's denial of UIM coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights." *Id.* "An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." *Id.*

*Ferrando* specifies a two-step analysis in applying its holdings. In late-notice cases, the court must first consider whether the "insurer received notice 'within a reasonable time in light of all of the surrounding facts and circumstances.'" *Id.* at 947 (quoting *Ruby v. Midwestern Indemn. Co.*, 531 N.E.2d 730 (Ohio 1988)). If the insurer received notice within a reasonable time, there was no breach and the UIM

coverage is not precluded. *Id.* If the insurer did not receive reasonable notice, then the court must next determine whether the insurer was prejudiced. *Id.* Unreasonable notice creates a presumption of prejudice, and the insured bears the burden of presenting evidence to the contrary. *Id.*

In subrogation cases, the court first determines "whether the provision actually was breached." *Id.* If it was not, coverage must be provided. *Id.* If a breach occurred, the court considers whether the UIM insurer was prejudiced. *Id.* Once again, there is a presumption of prejudice, and the insured bears the burden of presenting contrary evidence. *Id.*

In the instant case, Showalter's accident occurred on September 10, 1986. Lepley did not inform defendants-appellees of the accident and her claim until March 2001. The district court concluded that Lepley's more than fourteen-year delay in giving notice was unreasonable. In finding Lepley's failure to provide prompt notice unreasonable, the court considered the length of the delay and Lepley's failure to provide any notice until the date she filed her complaint.

Lepley claims that she complied with the notice and subrogation provisions as soon as practicable in light of all the surrounding facts and circumstances. Lepley argues that prior to the *Scott-Pontzer* decision, she had no reason to believe that she would be covered under the policies, and she claims that Hartford would have denied her claim. While Lepley is correct that the *Scott-Pontzer* decision clearly established the existence of the coverage at issue, nothing prevented Lepley from exercising due diligence and investigating possible insurance coverages under her husband's employer's policies and notifying defendants-appellees of the accident. Lepley may be correct that Hartford would have denied coverage, but Lepley could have litigated the matter. Awaiting a favorable Ohio Supreme Court decision is not a reasonable excuse for delaying notice and failing to preserve subrogation rights. *See Heiney*, 2002 WL

1625571, at * 7. Moreover, the *Scott-Pontzer* decision was issued on June 23, 1999, and Lepley did not provide notice until March 2001.

Lepley further argues that her delay in notifying defendants-appellees of the accident was not unreasonable because the notice provision in the Hartford policy only requires that Scott & Fetzer notify Hartford after Scott & Fetzer receives notice at its corporate headquarters. Under this interpretation, only Scott & Fetzer's failure to notify defendants-appellees regarding accidents of which it was aware would preclude coverage under the policy. An employee insured would never be required to provide such notice and could receive coverage under the policy. This would render the prompt notice provision useless and therefore would not "give meaning to every provision" of a policy as required under Ohio insurance law. *Helberg v. Nat'l Union Fire Ins. Co.*, 657 N.E.2d 832, 834 (Ohio 1995).

Based on the above facts and circumstances, we find that the district court correctly concluded that defendants-appellees did not receive notice in a reasonable time. Because the delay was unreasonable, there is a presumption that defendants-appellees were prejudiced by Lepley's delay in providing notice. Lepley argues that *Ferrando* requires a remand to allow the district court to consider evidence rebutting the presumption of prejudice. The district court's opinion, however, makes clear that it applied the framework set forth in *Ferrando*. According to the district court, "a presumption of prejudice arises when a delay in giving notice is unreasonable as a matter of law, and Plaintiff Lepley offers no evidence to rebut this presumption," and, therefore, "prejudice to the defendants remains because of her unreasonable delay." Furthermore, the court noted that "the only mention [Lepley] makes of the notice requirements except arguing their inapplicability is to say that she did not violate the provisions and that the defendants did not offer evidence showing she failed to give notice." Lepley offered

"no evidence to show that the more than fourteen-year delay in receiving did not prejudice the defendants."

The district court applied the framework set forth in *Ferrando* and concluded that Lepley had failed to rebut the presumption of prejudice. Therefore, we find that the district court did not err in granting summary judgment in favor of defendants-appellees based on Lepley's failure to satisfy the notice provisions under the policies.

Because the court finds that Lepley failed to comply with the notice provisions, the court is not required to reach defendants-appellees' claim that Lepley is not entitled to coverage because she destroyed their subrogation rights in violation of the policies.

### III.

For all the reasons set forth above, we affirm the judgment of the district court.