RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0333P (6th Cir.)
File Name: 03a0333p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DORIS WALLS et al.,
    *Plaintiffs-Appellants,*

    *v.*
               No. 01-4320

AMERISURE MUTUAL
INSURANCE COMPANY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-00722—Solomon Oliver, Jr., District Judge.

Argued: July 29, 2003

Decided and Filed: September 18, 2003

Before: DAUGHTREY and MOORE, Circuit Judges;
CALDWELL, District Judge.[*]

———————————

[*] The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

## COUNSEL

**ARGUED:** Claudia R. Eklund, LOWE, EKLUND, WAKEFIELD & MULVIHILL CO., Cleveland, Ohio, for Appellants. Laurie J. Nicholson, THOMPSON HINE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Claudia R. Eklund, LOWE, EKLUND, WAKEFIELD & MULVIHILL CO., Cleveland, Ohio, for Appellants. Laurie J. Nicholson, Christopher Mark Bechhold, THOMPSON HINE, Cincinnati, Ohio, for Appellee.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. The plaintiffs, Reda Walls and her mother Doris Walls, appeal the district court's grant of summary judgment to the defendant Amerisure Mutual Insurance Company ("Amerisure") and the district court's denial of their motion for summary judgment. The plaintiffs allege that the injuries Reda received in an automobile accident were covered by an insurance policy held by the Ford Motor Company, which employed Reda's father, Jessie Walls.

The district court premised its grant of summary judgment to the defendant (and its denial of summary judgment to the plaintiffs) on the fact that the plaintiffs did not comply with notice and subrogation provisions in the insurance policy. It is clear that the plaintiffs did in fact breach at least some of these provisions. After the district court decided this case, however, the Ohio Supreme Court decided *Ferrando v. Auto-Owners Mutual Insurance Co.*, 781 N.E.2d 927 (Ohio 2002). Under *Ferrando*, the mere fact that the plaintiffs may have breached the notice and subrogation clauses is not dispositive of their legal claim. Instead, the key question is whether the

plaintiffs' breach of these provisions was prejudicial to Amerisure — an issue that the district court did not address in its summary-judgment decision. Because the district court did not address this issue and because the plaintiffs should have a clearly delineated opportunity to show that their breaches were not prejudicial, we **REVERSE** the district court's judgment and **REMAND** this case for the district court to conduct a prejudice inquiry under *Ferrando*.

## I. BACKGROUND

According to the complaint, on March 28, 1986, Reda Walls was riding in an automobile when it was struck by a car negligently operated by Lawrence Lavrich. Reda, who was seventeen years old at the time, sustained significant permanent injuries. At the time of the accident, Reda's father, Jessie Walls, was an employee of the Ford Motor Company. The Ford Motor Company had an insurance policy ("the policy") with the Michigan Mutual Insurance Company (now in business as Amerisure Mutual Insurance Company), that provided automobile liability insurance. This policy was issued for the period of December 15, 1983 to December 15, 1986, and was in effect at the time of the accident.

On June 1, 1988, the plaintiffs settled their claims against Lavrich, who was an underinsured motorist, and released him and his insurance carrier from all liability in exchange for a payment of $50,000. It was not until February 21, 2001 that the plaintiffs notified Amerisure of the accident. Apart from the settlement that the plaintiffs received from Lavrich and his insurer, the plaintiffs also received $50,000 from the State Farm Insurance Company, which insured the vehicle in which Reda was riding at the time of the accident.

The Amerisure insurance policy provided both general commercial liability insurance and automobile insurance. The automobile insurance component of the policy consists of a section entitled "Comprehensive Automobile Liability Insurance," J.A. at 47-57, and a supplementary section,

entitled "Personal Auto Policy," J.A. at 58-67. The Personal Auto Policy contains a subsection that provides uninsured motorists ("UM") coverage. The Personal Auto Policy did not, however, include underinsured motorists ("UIM") coverage, which was apparently never offered. Although the policy has general liability limits in the amount of $1,000,000, an endorsement purports to limit the UM coverage to $100,000 per person and $300,000 per accident.

There are several notice and subrogation provisions in this insurance policy. First, the Comprehensive Automobile Liability Insurance part of the policy contains apparently policy-wide consent-to-settle and subrogation provisions:

> *In the event of any payment under this Policy*, the Company shall be subrogated, subject to the rights of others, including the INSURED, to the INSURED's rights to recover from others to the extent of the Company's payments and will act in concert with all other interests concerned in the exercise of the INSURED's rights of recovery against any person or organization. The INSURED shall execute and deliver such assignments and similar instruments and papers as are necessary to secure such rights and shall cooperate with the Company.
>
> The INSURED may release others from liability and also waive the Company's right of subrogation against third parties but only if such releases or waivers are prior to loss and are by contract.

J.A. at 55 (emphasis added).

Second, the Personal Auto Policy has notice and subrogation provisions:

> We must be notified promptly of how, when and where the accident or loss happened . . . .

A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

\* \* \*

If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

J.A. at 65-66.

Finally, the uninsured motorists coverage part of the Personal Auto Policy itself contains a consent-to-settle "exclusion":

We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:
\* \* \*
2. If that person or the legal representative settles the bodily injury claim without our consent.

J.A. at 63.

In addition to these provisions, the Comprehensive Automobile Liability Insurance part of the policy also contains the following provision:

B. Notice of Occurrence, Claim, or Legal Proceeding
Whenever the Corporate Insurance Manager, Ford Motor Company, Dearborn, Michigan, becomes aware of and in his reasonable judgment concludes that an OCCURRENCE covered hereunder is likely to involve this Policy, notice of the OCCURRENCE shall be given

to the Company or its agent as soon as practicable; however, failure to give notice of any OCCURRENCE shall not prejudice such claims.

J.A. at 55.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction over this diversity case pursuant to 28 U.S.C. § 1332, because the plaintiffs are citizens of Ohio and the defendant is a Michigan corporation that has its principal place of business in Michigan. *See Lee-Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898, 899-900 (6th Cir. 2003). Pursuant to 28 U.S.C. § 1291, we have jurisdiction over the district court's final judgment.

### B. Standard of Review

This court reviews de novo a grant of summary judgment. *Bukowski v. City of Akron*, 326 F.3d 702, 707 (6th Cir. 2003). Although the denial of a motion for summary judgment is usually an interlocutory order that is not immediately appealable, where "an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 235 (6th Cir. 2003) (quotation omitted). We review de novo a denial of summary judgment on purely legal grounds. *Id.* at 235-36. Summary judgment can only be granted when, taking all justifiable inferences in the nonmoving party's favor, there is still no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

### C. The Notice and Subrogation Issues

The issue in this case on appeal is whether the plaintiffs have breached the notice and subrogation provisions in the Amerisure policy, and whether such breaches vitiate their claim for coverage. We conclude that at least some of the provisions related to notice and subrogation do apply to the plaintiffs' claim, and that the plaintiffs have indisputably breached them. However, it is now clear that a mere breach of these provisions does not necessarily vitiate coverage. Instead, the question is whether the breach prejudiced the insurer. Because the district court did not examine that issue and because the plaintiffs have shown that they could possibly demonstrate a lack of prejudice, we remand this case to the district court for further proceedings on this issue.

### 1. The Effect of Notice and Subrogation Provisions in Policies Where UM/UIM Coverage is Implied by Law

It is important to stress that the plaintiffs are not seeking to recover under the written policy. They concede that the policy only insures damages caused by the operator of an uninsured motor vehicle and that Lavrich was insured to some extent — in fact, the plaintiffs recovered $50,000 from Lavrich's insurer. Instead, the plaintiffs apparently are arguing that the insurer's failure to offer *under*insured motorists coverage created *under*insured motorists coverage in the amount of the policy limits pursuant to *Gyori v. Johnston Coca-Cola Bottling Group, Inc.*, 669 N.E.2d 824 (Ohio 1996), and *Linko v. Indemnity Insurance Co. of North America*, 739 N.E.2d 338 (Ohio 2000).

Because they are not seeking to recover under the written policy, the plaintiffs claim that the notice and subrogation clauses in the written policy do not apply to their claims for implied UIM benefits. This court, however, has already rejected this assertion. In *Lepley v. Hartford Accident & Indemnity Co.*, 334 F.3d 544 (6th Cir. 2003), we stated that

"if an insurance policy specifies general conditions precedent that must be satisfied before an insured is entitled to any coverage, then an insured's failure to comply with those conditions precedent precludes recovery under UM/UIM coverage that arises by operation of law." *Id.* at 549. We then held that the notice and subrogation provisions in *Lepley* were such general conditions precedent, and that they therefore did "carry over" onto implied UM/UIM coverage. *Id.* (holding that "the notice and subrogation clauses are valid and enforceable preconditions to an insure[r]'s duty to provide underinsured motorist coverage even where UM/UIM coverage arises as a matter of law") (quotation and brackets omitted); *see also Clark v. Chubb Group of Ins. Cos.*, 337 F.3d 687, 696 (6th Cir. 2003) (explaining this point).

The insurance policy in this case does have at least two policy-wide conditions that act as general conditions precedent that must be satisfied before any recovery under the policy is permitted. These are the policy-wide consent-to-settle provision and the policy-wide subrogation provision. J.A. at 55. These provisions, under *Lepley*, apply to any claim for implied UM/UIM benefits.[1]

---

[1] As explained *infra*, the policy has several other notice and subrogation provisions. The Personal Auto Policy contains notice and subrogation provisions, and the uninsured motorists coverage part of the Personal Auto Policy itself has a separate consent-to-settle provision. It is unclear to us whether these provisions also apply to the plaintiffs' claim for implied UM/UIM benefits. It is frankly difficult to tell whether these provisions are policy-wide, and, relatedly, whether provisions that are not policy-wide "carry over" onto implied UM/UIM coverage. *Cf. Lepley v. Hartford Acc. & Indem. Co.*, 334 F.3d 544, 549 (6th Cir. 2003) (suggesting that only those conditions that are "*general conditions precedent* that must be satisfied before an insured is entitled to *any* coverage" apply to claims of implied coverage) (emphasis added). Moreover, it is unclear whether any provisions requiring prompt notice are operative in light of language in the policy stating that "failure to give notice of any OCCURRENCE shall not prejudice such claims." J.A. at 55. Because we find that the policy-wide consent-to-settle and subrogation provisions do have effect, however, we do not address these issues, instead leaving them for the district court to consider, if need be,

## 2. The Question of Breach

The question now becomes what legal effect the consent-to-settle and subrogation clauses have. The Ohio Supreme Court, in a recent decision issued after the parties filed their appellate briefs, has made clear the law that governs breaches of these types of subrogation clauses. *See Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927 (Ohio 2002). As we have recently explained, *Ferrando* held that "breaches of notice and subrogation provisions serve to vitiate the coverage provided by an insurance policy only if they are prejudicial to the insurer," but that "breaches are presumed to be prejudicial unless proven to be harmless by the insureds." *Clark*, 337 F.3d at 692.[2]

We hold that the plaintiffs here have breached the policy-wide consent-to-settle and subrogation provisions. The provisions clearly require that insureds not release others from liability or waive Amerisure's subrogation rights without Amerisure's permission. By releasing Lavrich and his insurer, the plaintiffs breached these provisions. The plaintiffs' only defense is their claim that the unforeseeable nature of the Ohio Supreme Court's *Scott-Pontzer* decision (which provided the basis for considering Reda Walls to be an insured) meant that they had no idea that a claim against Amerisure was viable until 1999 (which was when *Scott-*

---

on remand.

[2] As we explained in *Clark*, *Ferrando* marked a significant change in how Ohio law treated breaches of subrogation provisions (which include consent-to-settle provisions, *see Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 947 (Ohio 2002)). Before *Ferrando*, a breach of a subrogation provision automatically vitiated coverage. *Ferrando*, however, conformed to Ohio precedent in its treatment of notice provisions, as it was clear even before *Ferrando* that a breach of a notice provision did not necessarily preclude coverage. Instead, the breach of the provision had to be prejudicial. *See Clark v. Chubb Group of Ins. Cos.*, 337 F.3d 687, 692 n.2 (6th Cir. 2003).

*Pontzer* was decided). *See Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 710 N.E.2d 1116, 1120 (Ohio 1999). We, however, rejected this precise argument in both *Clark* and *Lepley* and will not consider it again. *See Lepley*, 334 F.3d at 551 (stating that while the plaintiff's claim was only viable because of the *Scott-Pontzer* decision, the plaintiff still "could have litigated the matter," as "[a]waiting a favorable Ohio Supreme Court decision is not a reasonable excuse for delaying notice and failing to preserve subrogation rights"); *see also Clark*, 337 F.3d at 693. We therefore hold that the plaintiffs have breached the consent-to-settle and subrogation provisions in the policy.

## 3. The Question of Prejudice (and of Remand)

Having addressed the issue of breach, we now turn to the issue of prejudice. Under *Ferrando*, once it has been shown that plaintiffs have breached a notice or subrogation provision, the plaintiffs must submit evidence to overcome the presumption of prejudice that attaches to such a breach. *Clark*, 337 F.3d at 693. The parties seem to agree that the plaintiffs have not, as of yet, overcome that presumption. The parties disagree, however, as to what should happen as a consequence. The defendant argues that we should dismiss the plaintiffs' claim. The plaintiffs argue that we should remand this case to the district court to allow them an opportunity to show a lack of prejudice. Ultimately, we agree with the plaintiffs and remand this case.

We have considered the appropriateness of a remand under these circumstances twice before, both in *Clark* and in *Lepley*. In *Lepley*, when faced with the plaintiffs' breach of notice and subrogation provisions, we dismissed the plaintiffs' claims. By way of contrast, in *Clark*, we remanded the case to the district court. *Lepley* and *Clark*, however, are "in no way inconsistent." *Clark*, 337 F.3d at 694 n.3. In *Lepley*, the district court had previously "analyzed the prejudice issue and had stated in its opinion that Lepley offered 'no evidence to [rebut the presumption of prejudice].'" *Clark*, 337 F.3d at

694 n.3 (quoting *Lepley*, 334 F.3d at 552). In *Clark*, however, "the district court did not examine the issue of prejudice, believing that it was unnecessary." *Id.* This is the pivotal distinction on which the result in *Clark* turned; in *Clark*, a remand was necessary to allow the district court to do the initial fact-finding on the prejudice issue, thereby also "insur[ing] that the plaintiffs have, at some point in the litigation, an opportunity to show" a lack of prejudice. *Id.*

As was the case in *Clark*, the district court below did not evaluate the prejudice issue in its summary-judgment decision; it instead viewed any breach as automatically vitiating coverage. As a result, the district court made no findings regarding prejudice that we review here.[3] Moreover, we note that the plaintiffs at oral argument pointed to specific pieces of evidence that could well establish that their breaches of the consent-to-settle and subrogation provisions were not prejudicial to Amerisure. The plaintiffs stated that State Farm (which insured the car in which Reda Walls was riding) did

---

[3]In addition to asking this court for a remand, the plaintiffs also moved to reopen their case in the district court. The plaintiffs argued that, in light of *Ferrando* and the fact that the district court had made no findings regarding prejudice, the case should be reopened. In denying the plaintiffs' motion to reopen, the district court acknowledged that it did not examine the prejudice issue in its summary-judgment decision. The district court explained that the plaintiffs had not shown evidence of a lack of prejudice either before summary judgment was granted in the district court or in any later affidavits attached to the motion to reopen.

We nonetheless believe a remand to be appropriate here. As we explain *infra*, there is evidence (both within and outside of the current record) suggesting that the plaintiffs' breaches were not prejudicial. The fact that the plaintiffs did not refer to this evidence in their motion to reopen may justify the district court's denial of that motion, but we are not reviewing the district court's denial of that motion; we are reviewing the grant of summary judgment to the defendants. Given the fact that the district court did not make any determination on the issue of prejudice before granting summary judgment against the plaintiffs and given the possibility that the plaintiffs could in fact show a lack of prejudice, we continue to believe that a remand is appropriate here even in light of the district court's subsequent decision to deny the motion to reopen.

an investigation of the accident, consented to the settlement Walls reached with Lavrich and his insurer, and paid benefits on the UIM claim. The fact that State Farm, another UM/UIM carrier, accepted the settlement with Lavrich after an investigation suggests that State Farm viewed a recovery from Lavrich above the $50,000 settlement figure to be unlikely, if not impossible. This, in turn, suggests that Amerisure perhaps lost nothing of value when the plaintiffs settled with Lavrich and his insurer and destroyed Amerisure's subrogation rights. *Cf. Ferrando*, 781 N.E.2d at 949 (noting that whether "the prejudicial effect [of a consent-to-settle provision's breach] on the insurer [is] minimal" will "depend[] on the value of the subrogation rights sought to be protected"). We also note that the record already contains a certified copy of Lavrich's conviction for failing to stop at a red light as well as evidence that Reda Walls was merely a passenger in the impacted car. This evidence tends to suggest strongly that it was Lavrich (who was an underinsured driver) who was responsible for the accident and that Reda Walls was free of any contributory fault.

While the facts listed above do not establish a lack of prejudice, it does appear that the plaintiffs may, on remand, be able to adduce evidence to support such a conclusion. As the prejudice inquiry is a factual one that we feel ill equipped to resolve, we (consistent with Ohio practice) choose to remand this case and leave it to the district court to handle in the first instance. *See Clark*, 337 F.3d at 693-94 (noting the "many [Ohio intermediate] courts [that] have remanded *Scott-Pontzer* cases to the trial court for further proceedings").

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment and **REMAND** this case for further proceedings consistent with this opinion.