NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0098n.06

No. 22-4054

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY; DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |

**FILED**
Mar 05, 2024
KELLY L. STEPHENS, Clerk

Before: GRIFFIN, BUSH, and LARSEN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this insurance dispute, plaintiff ACE American Insurance Company paid nearly $5 million in defense costs for its insured before other insurers were notified of the underlying litigation. After defendant insurers refused to contribute for these costs, ACE filed this action for equitable contribution. The district court granted summary judgment in favor of defendants, ruling that, based on untimely notice alone, they did not share ACE's obligation for the pre-tender expenses. We vacate the district court's judgment and remand for further proceedings consistent with this opinion.

I.

Safelite Group, Inc., is a windshield repair company that had commercial general liability policies through ACE, Discover Property & Casualty Insurance Company, and Zurich American Insurance Company. In August 2015, Richard Campfield and Ultra Bond, Inc. (collectively

"Campfield"), sued Safelite for Lanham Act violations; in short, Campfield alleged that Safelite's advertising falsely led consumers into thinking windshield cracks longer than six inches cannot be repaired, which harms the businesses of smaller companies—like Campfield's—that perform such repairs. That litigation remains ongoing. *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401 (6th Cir. 2024).

Safelite notified ACE of the suit in January 2016 but not defendant insurers. After Safelite satisfied its deductible, ACE started paying for its defense in June 2017. But more than a year later ACE inquired regarding Safelite's other general liability insurers. Discover and Zurich learned about the *Campfield* litigation ten months after that in August 2019. By that time, ACE had paid nearly $5 million in defense costs; it then waited until October 2019 to inform Discover and Zurich that it intended to seek equitable contribution for Safelite's defense costs. Discover and Zurich agreed to equally share future defense costs with ACE, but refused to reimburse ACE for pre-tender defense costs incurred before the date they received notice of the case.

Thereafter, ACE commenced this litigation against Discover and Zurich, seeking equitable contribution "for all past and future defense costs that ACE has paid or will pay on Safelite's behalf." Discover and Zurich stipulated, for purposes of this litigation, that the *Campfield* litigation triggered a duty to defend based on their contracts and that the pre-tender defense costs "were reasonable and necessary." The parties each moved for summary judgment. Discover and Zurich argued that they had no duty to pay pre-tender defense costs solely because they were not timely notified of the *Campfield* litigation. ACE asserted that defendants were obligated to contribute despite the untimely notice due to a lack of prejudice. The district court granted summary judgment in favor of Discover and Zurich, concluding that they had no duty to contribute because of untimely notice and that a prejudice inquiry was unnecessary. ACE timely appealed.

-2-

II.

We review de novo the district court's grant of summary judgment, "viewing the evidence in the light most favorable to the nonmoving party." *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) (citation omitted). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of [the court]," when ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III.

At issue in this case is whether under these circumstances ACE is entitled—under Ohio law—to recover its pre-tender defense costs through equitable contribution from defendants.[1] To prevail, ACE must show that it shared a defense obligation with Discover and Zurich despite the untimely notice they received of the *Campfield* litigation. Pointing to Ohio's "all-sums" approach, ACE argues that it acted exactly as instructed by the Ohio Supreme Court when an insured identifies a single "targeted insurer" to handle its defense. In contrast, Discover and Zurich argue that the untimely notice alone—regardless of prejudice—negates their obligation. To answer these questions, we first address equitable contribution in general, then whether the all-sums approach applies, and finally whether prejudice is necessary for Discover and Zurich to share a defense obligation with ACE.

---

[1]It is undisputed that Ohio law controls this case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

A.

Equitable contribution "is an equitable doctrine that rests upon the broad principle of justice, that where one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a ratable portion." *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 112 N.E.3d 503, 508 (Ohio Ct. App. 2018) (internal quotation marks omitted). In other words, a plaintiff seeking equitable contribution must show: (1) the existence of a shared obligation; (2) the payment of the obligation by the plaintiff; and (3) the defendant's failure to pay its proportionate share. *See McDougall v. Cent. Nat'l Bank*, 104 N.E.2d 441, 445 (Ohio 1952). Ohio courts "apply the doctrine of contribution liberally since it is based on broad principles of equity." *Resco Holdings*, 112 N.E.3d at 508. "Virtually all cases involving equitable contribution among insurers concern a single insurer that paid a claim and sought contribution from one or more nonpaying insurers." *Id.* at 512. The party seeking equitable contribution has the burden to prove that it is appropriate by a preponderance of the evidence. 18 Am. Jur. 2d Contribution § 99.

ACE paid all pre-tender defense costs, and the parties do not dispute that if Discover and Zurich are deemed responsible for any of those costs, then they received a benefit from ACE doing so. They similarly do not dispute that Discover and Zurich received untimely notice of the *Campfield* litigation. So the question before us is whether Discover and Zurich shared a common obligation with ACE. Answering that question requires us to examine Ohio insurance law.

In Ohio, insurance contracts are interpreted under general contract law, so we interpret their words based on their plain and ordinary meaning and, if they are clear and unambiguous, their interpretation is a question of law. *Krewina v. United Specialty Ins. Co.*, 221 N.E.3d 819, 822–23 (Ohio 2023). When an insurance contract includes a notice provision, notice must be

timely given to trigger the duty to defend. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 842 (Ohio 2002); *Red Head Brass, Inc. v. Buckeye Union Ins. Co.*, 735 N.E.2d 48, 57–59 (Ohio Ct. App. 1999); *see also Am. Emps. Ins. Co. v. Metro Reg'l Transit Auth.*, 12 F.3d 591, 592–93 (6th Cir. 1993) (applying Ohio law). If notice is not timely, then the insured has the burden to show that there was no prejudice to the insurer; but if the insurer was prejudiced by the untimely notice, then "coverage must be forfeited." *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 946–47 (Ohio 2002); *see also Clark v. Chubb Grp. of Ins. Cos.*, 337 F.3d 687, 692 n.2 (6th Cir. 2003) (discussing *Ferrando*). The Ohio Supreme Court explained:

> If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and [insurance] coverage is not precluded. If the insurer did *not* receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.

*Ferrando*, 781 N.E.2d at 947; *see also Clark*, 337 F.3d at 692–93. In essence, violating a notice provision breaches the contract. *Ferrando*, 781 N.E.2d at 947. But that breach is material and allows the insurer to deny coverage only if the untimely notice prejudiced the insurer—and the insured must overcome a presumption of prejudice. *See id.*

"[T]he prejudice inquiry is a factual one." *Walls v. Amerisure Mut. Ins. Co.*, 343 F.3d 881, 887 (6th Cir. 2003) (applying Ohio law). For example, prejudice may be shown by witnesses, documents, or other evidence no longer being available, *Ormet Primary Aluminum Corp. v. Emps. Ins. of Wausau*, 725 N.E.2d 646, 656 (Ohio 2000), or from the insurer's inability to participate in negotiations to reduce costs, *Canton Drop Forge, Inc. v. Travelers Cas. & Sur. Co.*, 2021 WL 5895789, at *2 (6th Cir. Dec. 14, 2021). Similarly, "[p]rejudice has been described as seriously impairing the insurer's ability to investigate a claim." *McCruter v. Travelers Home & Marine Ins. Co.*, 168 N.E.3d 1, 16 (Ohio Ct. App. 2021) (internal quotation marks omitted).

B.

ACE first argues that it is entitled to equitable contribution because it acted exactly as a "targeted insurer" should under Ohio's "all-sums" approach by defending Safelite on its own and only later seeking equitable contribution from Discover and Zurich. If the all-sums approach applies, ACE can then use it to show that Discover and Zurich were not prejudiced by receiving untimely notice of the *Campfield* litigation. The district court was not persuaded and concluded instead that Ohio's general prejudice rules applied to this dispute. We agree.

Under Ohio law, "[t]he all-sums approach allows the insured to seek full coverage for its claims from any single policy, up to that policy's coverage limits, out of the group of policies that has been triggered." *Resco Holdings*, 112 N.E.3d at 508 (internal quotation marks omitted). "The insured selects one insurer (the 'targeted insurer') from which it may obtain a defense and indemnification up to the insurer's policy limits. The targeted insurer then has the right to seek contribution from the other insurers (the 'nontargeted insurers')." *Id.* Untimely notice is "the natural result of [the] all-sums approach, which was designed to streamline the recovery process for the insured by permitting the insured to choose one primary targeted insurer with which to deal during the litigation." *Pa. Gen. Ins. Co. v. Park-Ohio Indus.*, 930 N.E.2d 800, 808 (Ohio 2010). Indeed, the all-sums approach "presupposes that some insurers might not receive an opportunity to sit at the negotiation table and that those insurers must wait for a resolution in the underlying case." *Id*. So untimely notice based on "adherence to the all-sums approach does not in and of itself result in prejudice to the nontargeted insurers." *Id*.

But the all-sums approach is limited to cases involving "progressive" injuries such as "continuous . . . environmental pollution," *Goodyear Tire & Rubber Co.*, 769 N.E.2d at 841, or asbestos-related injuries that manifest over time, *Park-Ohio*, 930 N.E.2d at 803; *see also Lubrizol*

*Advanced Materials, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 160 N.E.3d 701, 705 (Ohio 2020) (discussing *Goodyear* and *Park-Ohio*). Ohio courts do not use the all-sums approach if "the time of damage is known or knowable." *Lubrizol*, 160 N.E.3d at 705–06. For example, the Ohio Supreme Court declined to apply the all-sums approach in *Lubrizol* because the damages—caused by resin used in plumbing—occurred at a discernible time. *Id*.

This case does not involve a progressive injury. The alleged injuries in the *Campfield* litigation are specific and identifiable statements made by Safelite over many years that were allegedly false and misleading. So the underlying injuries here are much like those in *Lubrizol*: distinct and identifiable events that occurred at a known or knowable time. And they are unlike the injuries caused by continuous exposure in *Goodyear* and *Park-Ohio* that festered over time and resulted in disease and pollution. Consequently, the all-sums approach does not apply here.

ACE pushes back on this conclusion, arguing that *Lubrizol*'s limitation of the all-sums approach to progressive-injury cases does not control because it addressed indemnification, not defense costs. True, *Lubrizol* specifically answered a certified question about indemnification. And the duty to defend is "broader than the duty to indemnify." *Red Head Brass, Inc.*, 735 N.E.2d at 54. But ACE has presented no authority establishing that defense and indemnification costs should be allocated differently. Nor do *Goodyear*, *Park-Ohio*, or *Lubrizol* suggest that any such scheme would be appropriate. *See also Resco Holdings*, 112 N.E.3d at 508–09 (discussing the all-sums approach). Consequently, the difference between defense and indemnity costs here makes no difference.

C.

ACE alternatively contends that even if it is wrong about the all-sums approach's application, the district court nevertheless erred in declining to conduct the *Ferrando* prejudice analysis. We agree.

1.

As discussed, Ohio law generally requires prejudice for untimely notice to materially breach an insurance policy and allow an insurer to deny coverage. *Ferrando*, 781 N.E.2d at 947. The district court concluded that this case presented an exception to that general rule based on the unpublished Ohio Court of Appeals decision in *Dover Lake Park, Inc. v. Scottsdale Ins. Co.*, No. 21324, 2003 WL 21458956 (Ohio Ct. App. June 25, 2003). *Dover Lake* reasoned that the prejudice inquiry mandated by *Ferrando* was based on "policy reasons" that "include[d] the adhesive nature of insurance contracts, the public policy of compensating tort victims, and the inequity of the insurer receiving a windfall due to a technicality." *Id.* at \*3. Because the *Dover Lake* court concluded that none of these policy reasons favored the insured, it held that there was no need to conduct the *Ferrando* prejudice analysis. *Id.* at \*3–4.

While we can look to unpublished lower-court decisions when making an *Erie* guess, our task when confronted with the absence of state supreme court caselaw is to "ascertain from all available data . . . what the state's highest court would decide if faced with the issue." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001). Because *Dover Lake* is contrary to *Ferrando*, we conclude the Ohio Supreme Court would not adopt its reasoning.

Start with the "policy reasons" discussed in *Dover Lake*. *Ferrando* did not base its holding on those policy reasons alone. Instead, those were some of the many reasons it chose to adopt the notice-prejudice rule. *Ferrando*, 781 N.E.2d at 934–36, 942–45, 947. Moreover, nothing in

*Ferrando* suggests that its notice-prejudice rule should apply only when the specific facts of a case support the policy reasons for doing so.  Rather, *Ferrando*'s broad holding established a general rule that an insurer is "released from the obligation to provide [insurance] coverage when the insurer is prejudiced by the lack of reasonable notice."  *Id.* at 930.  Sidestepping the prejudice inquiry, as *Dover Lake* did, conflicts with that holding.

Furthermore, no other court has adopted this over-twenty-year-old case's reasoning. *Cf Olbrys v. Peterson Boat Works, Inc.*, 81 F.3d 161, at *4–5 (6th Cir. 1996) (unpublished table decision) (declining to follow an outlier unpublished court of appeals decision).  And we are unaware of any other Ohio case similarly declining to apply *Ferrando*'s mandated prejudice inquiry.  Rather, *Dover Lake* aside, Ohio courts universally conduct the prejudice inquiry set forth in *Ferrando*.  *See, e.g.*, *Thomas v. Nationwide Mut. Ins. Co.*, 895 N.E.2d 217, 229 (Ohio Ct. App. 2008).  And this makes sense, because *Ferrando* set forth the general rule for insurance contracts concerning prejudice.  In short, the weight of relevant data shows that *Ferrando*'s rule is universal. For these reasons, the district court erred in declining to conduct the prejudice inquiry mandated by *Ferrando*.

2.

Discover additionally seeks to avoid the prejudice analysis because the notice provisions in its contracts required notice within thirty days rather than "a reasonable time."  According to Discover, that makes its contracts similar to "claims made" contracts.

> Notice is a particularly important matter in claims-made policies.  Claims made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time.  An occurrence policy provides coverage for acts done during the policy period regardless of when the claim is brought.  In contrast, a claims made policy provides coverage for claims brought against the insured only during the life of the policy.  So the very essence of a claims-made policy requires the claim to be first made during the policy period.

*Wright State Physicians, Inc. v. Drs. Co.*, 78 N.E.3d 284, 289 (Ohio Ct. App. 2016) (internal quotation marks, citations, and brackets omitted). *See also United States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir. 1989) ("Claims made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time. To allow coverage beyond that period would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed."). The distinction between the two types of contracts is important because *Ferrando*'s notice-prejudice rule does not apply to claims-made policies. *See ISCO Indus., Inc. v. Great Am. Ins. Co.*, 148 N.E.3d 1279, 1281–82, 1286–88 (Ohio Ct. App. 2019).

Even though Discover's policies required it to receive notice of a claim within thirty days, they nevertheless covered any "offense . . . committed . . . during the policy period." That coverage makes them occurrence policies, not claims-made ones. Indeed, Discover argues that its specific-notice provision makes its policies merely similar to a claims-made policy; Discover does not argue that its policies actually were claims-made policies. While Discover's specific-notice provision does make its policies similar to a claims-made policy, they are similar, not the same. As explained above, what sets apart a claims-made policy is the requirement that a claim be made during the policy period. Such a policy provides certainty to insurers regarding when their liability ends. In contrast, Discover had no such certainty with its occurrence policies because its policies had no similar specified date by which Discover did not have to provide insurance benefits to Safelite.

Nevertheless, Discover asks us to treat specific-notice provisions in occurrence policies differently from those that use amorphous terms like "prompt notice." But doing so would conflict with *Ferrando*. True, *Ferrando* specifically dealt with prompt-notice provisions. Yet its reasoning applies equally to specific-notice provisions in occurrence policies. Whether notice was timely

simply started the analysis in *Ferrando*. And *Ferrando* held that untimely notice—without more—does not materially breach an insurance contract. The major difference between a specific-notice provision and an unspecified one is how easy it is to determine whether the notice was untimely. After passing that threshold, however, the analysis for an occurrence policy should be the same as outlined in *Ferrando*. Thus, the notice provisions in Discover and Zurich's policies should be treated the same from a prejudice perspective.

D.

In summary, to receive equitable contribution, ACE must show that it shared a defense obligation with Discover and Zurich. Because the all-sums approach does not apply here, ACE cannot rely on its special notice rules to establish a shared defense obligation. And that shared obligation exists only if Discover and Zurich were prejudiced by the untimely notice they received of the *Campfield* litigation. But the district court did not conduct the fact-intensive prejudice analysis, so we remand for it to do so in the first instance. *See Walls*, 343 F.3d at 887. After all, we are "a court of review, not first view." *Taylor v. City of Saginaw*, 11 F.4th 483, 489 (6th Cir. 2021) (citation omitted). Similarly, we leave for the district court to consider in the first instance on remand the question of whether the voluntary-payment provisions of Discover and Zurich's insurance policies mean they do not share a defense obligation with ACE.

IV.

For the reasons stated, we vacate the district court's judgment in favor of Discover and Zurich and remand for further proceedings consistent with this opinion.