PENNSYLVANIA GENERAL INSURANCE COMPANY, APPELLANT,

v.

PARK–OHIO INDUSTRIES, INC., ET AL., APPELLEES.

[Cite as *Pennsylvania Gen. Ins. Co. v. Park–Ohio Industries, Inc.*, 179 Ohio App.3d 385, 2008-Ohio-5991.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90619.

Decided Nov. 20, 2008.

386

Singerman, Mills, Desberg & Kauntz and Michael R. Stavnicky; Davis & Young and Richard M. Garner; and Christie Parabue Mortensen Young and Elaine W. Klinger, for appellant.

Calfee, Halter, Griswold, L.L.P., and Stacy R.C. Berlinger, for appellee Park–Ohio Industries, Inc.

Gallagher Sharp, Paul J. Schumacher Jr., and Timothy J. Fitzgerald, for appellee Continental Casualty Company.

Mazanec, Raskin, Ryder & Keller Co., Thomas S. Mazanec, John T. McLandrich, and Frank H. Scialdone, for appellee Nationwide Insurance Company.

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Plaintiff-appellant, Pennsylvania General Insurance Company, appeals from the trial court's judgment denying its claim seeking equitable contribution from defendants-appellees, Nationwide Insurance Company and Continental Casualty Company. For the reasons that follow, we reverse and remand.

## I. Factual History

### A. The DiStefano Asbestos Bodily Injury Claim

{¶ 2} This case arose out of a bodily injury suit filed on March 7, 2002, by George DiStefano against Pennsylvania General's insured, Park–Ohio Industries, Inc., and a number of other defendants in California state court. DiStefano alleged mesothelioma due to asbestos exposure at various work sites in California between the 1960s and 1980s. During his deposition, DiStefano testified that he had worked with asbestos-containing coils manufactured by Ohio Crankshaft, the predecessor to Park–Ohio, from January 1961 through approximately June 1963, periods when Pennsylvania General insured Park–Ohio.

{¶ 3} Upon being served with the complaint, Park–Ohio's risk manager and its current insurance agent initiated a search for applicable liability policies. Park–Ohio also retained a San Francisco law firm to represent its interests. Upon locating the Pennsylvania General policies five months later, in late August 2002, Park–Ohio notified Pennsylvania General of the DiStefano claim. When Pennsylvania General received notice of the claim, the DiStefano trial was set for the beginning of October 2002–approximately six weeks later.

{¶ 4} Upon receipt of the notice, Pennsylvania General began its claim investigation. It retained Henry Rome, a California attorney with expertise in asbestos matters, to assist its review and evaluation. It also inquired of Park–Ohio regarding "other insurance policies."

{¶ 5} In September 2002, prior to trial, Park–Ohio's lawyers gave Pennsylvania General an evaluation of the case regarding settlement values and strategy. Counsel advised that coordinated medical counsel had advised that they saw no viable medical defense and opined that the case had a conservative verdict value of $5–6 million. Counsel stated that the current settlement demand was $3 million and advised engaging DiStefano's counsel in "meaningful settlement negotiations immediately."

{¶ 6} On October 6, 2002, Park–Ohio, without the knowledge of Pennsylvania General, negotiated a settlement of the DiStefano claim for $1 million in exchange for a full release and dismissal with prejudice of the action. After the settlement, in a letter dated October 15, 2002, Rome advised Pennsylvania General that the settlement amount appeared to be in line with other mesothelioma cases in the San Francisco Bay Area, particularly where there was no other viable co-defendant—as in the DiStefano matter.

{¶ 7} Rome further advised Pennsylvania General that, based on his experience, he believed Park–Ohio was well represented by the two law firms it had retained, both having excellent reputations in the defense of asbestos cases. Rome also advised Pennsylvania General that he agreed with the legal analysis of

Park–Ohio's defense counsel, who had concluded that Park–Ohio would not likely mount a successful medical defense. Rome also agreed that Park–Ohio was the only viable defendant and conservatively faced multimillion-dollar exposure at trial.

{¶ 8} Rome further advised Pennsylvania General that he did not believe Pennsylvania General would be able to deny the DiStefano claim based on Park–Ohio's five-month delay in notifying Pennsylvania General, as there was no evidence of prejudice in light of the excellent asbestos litigation reputations of the defense firms Park–Ohio had retained.

{¶ 9} Subsequently, in November 2002, Rome advised Pennsylvania General that under California law, there is a "continuous" trigger of coverage for asbestos personal-injury actions such that all policies of a manufacturer are triggered upon exposure. Rome explained that because there were four Pennsylvania General policies, each with a $250,000 limit, there was $1 million available from which to pay the $1 million settlement.

{¶ 10} Nevertheless, in February 2003, Pennsylvania General informed Park–Ohio via a reservation of rights letter that it would pay $112,238.70 in post-tender defense costs and only $250,000 of the $1 million settlement. Pennsylvania General stated that its position was that "under prevailing law, plaintiff's claim qualifies as a single occurrence, and, even under a continuous trigger, the insured is entitled only to the limits of a single policy; i.e. $250,000 per person for bodily injury." Pennsylvania General reserved all of its rights under the potentially applicable policies and again requested "other insurance" information from Park–Ohio. Despite Pennsylvania General's request, Park–Ohio did not provide the requested information.

## B. Park–Ohio's Coverage Action Against Pennsylvania General

{¶ 11} In September 2003, Park–Ohio filed a complaint for declaratory judgment against Pennsylvania General in the matter captioned *Park–Ohio Industries Inc. v. Gen. Acc. Ins. Co.*, Court of Common Pleas, Cuyahoga County, Ohio, No. CV–03–511015 ("Park–Ohio suit"). Park–Ohio asserted claims for declaratory judgment, breach of contract, and bad faith, and sought defense costs and indemnification of the full settlement amount in the DiStefano action from Pennsylvania General. In October 2003, Pennsylvania General paid $112,238.70 to Park–Ohio as reimbursement of post-tender defense costs incurred by Park–Ohio in the DiStefano suit, and in December 2003, Pennsylvania General paid $250,000 to Park–Ohio as the full per-person bodily injury limit of one of the policies at issue.

{¶ 12} During litigation, Pennsylvania General, on numerous occasions, again requested information about Park–Ohio's "other insurers" from Park–Ohio.

Pennsylvania General was unable to obtain this information from Park–Ohio until, after motion practice, the trial court ordered Park–Ohio to produce the information. In July 2004, Pennsylvania General finally received copies of "other insurance" related documents from Park–Ohio. Approximately seven weeks later, on September 3, 2004, Pennsylvania General wrote to Nationwide, Continental, and St. Paul/Travelers[1] seeking equitable contribution for the DiStefano claim. None of these insurers agreed to contribute, although like Pennsylvania General, they were primary insurers of Park–Ohio, their policies were triggered by the DiStefano claim, and the essential terms, conditions, and exclusions of their policies are nearly identical to those of Park–Ohio's policies with Pennsylvania General.

## C. Pennsylvania General's Equitable Contribution Action

{¶ 13} In October 2004, before the Park–Ohio suit against it was resolved, Pennsylvania General filed this action for declaratory judgment seeking equitable contribution from Nationwide, Continental, and St. Paul/Travelers[2] for settlement and defense costs of the DiStefano claim. Specifically, Pennsylvania General sought $246,527 from Continental and $372,995 from Nationwide, plus prejudgment interest from an unspecified date.

{¶ 14} The action was subsequently stayed pending resolution of the Park–Ohio suit. In November 2005, Pennsylvania General settled the Park–Ohio suit by paying the remaining $750,000 of the DiStefano claim, for a total payment of $1 million.

{¶ 15} Pennsylvania General, Nationwide, and Continental subsequently agreed to a bench trial in this case, to be decided upon the briefs, joint stipulated facts, and joint exhibits. In a 15–page decision, the trial court found that Nationwide and Continental had no duty to indemnify or defend Park–Ohio because Park–Ohio had breached the notice provisions of their applicable policies and thus "waived" Pennsylvania General's right to contribution. The trial court further found that Pennsylvania General did not take reasonable measures to preserve its contribution rights because "it should have made certain the other insurers were notified before the DiStefano suit was settled" to allow them to participate in the defense and settlement of the suit. The trial court found "no equitable reasons for this court to endorse that failure," and therefore the trial court held that

---

1. Continental insured Park–Ohio from December 30, 1968, to January 1, 1975; Travelers insured Park–Ohio from January 1, 1975, to January 1, 1979; and Nationwide insured Park–Ohio from January 1, 1979, to February 1, 1988.

2. Pennsylvania General and Travelers subsequently agreed to a settlement and Travelers is not a party to this appeal.

Nationwide and Continental did not owe Pennsylvania General any contribution for the defense and settlement of the DiStefano action. Pennsylvania General appeals from this judgment.

## II. Law and Analysis

### A. Standard of Review

{¶ 16} The parties have made much over the appropriate standard of review in this case. Pennsylvania General argues that since the trial court reviewed this case upon stipulated facts and briefs, its decision is subject to review de novo as upon an error of law. See, e.g., *Mazza v. Am. Continental Ins. Co.*, 9th Dist. No. 21192, 2003-Ohio-360, 2003 WL 187580, affirmed *In re Uninsured and Underinsured Motorist Coverage Cases*, 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077. Nationwide and Continental claim that since the cause of action is equitable and not legal in nature (equitable contribution), the appropriate standard of review is abuse of discretion.

{¶ 17} We find that the outcome is the same, no matter the standard of review. As explained below, the trial court's resolution of the controversy upon the basis of Park–Ohio's lack of notice to Nationwide and Continental was an error of law, because the contractual provision requiring notice existed only in the contracts between Park–Ohio and its insurers and not between Pennsylvania General and Nationwide and Continental. Hence, Pennsylvania General's equitable claim of contribution cannot be invalidated as a result of alleged breaches of contracts to which Pennsylvania General was not a party.

{¶ 18} Reviewed on the basis of abuse of discretion, we likewise reverse and remand. The record is uncontroverted that the DiStefano settlement was equitable, the attorney fees were reasonable, counsel chosen by Park–Ohio was competent, Pennsylvania General adequately represented Nationwide and Continental's interests, and Nationwide and Continental received reasonable notice of Pennsylvania General's contribution claim. We discern no prejudice whatsoever to Nationwide and Continental. Under such circumstances, relieving them of the obligation of contribution, and leaving Pennsylvania General with the entire obligation, was an abuse of discretion.

### B. The "All Sums" Approach

{¶ 19} In *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 6, the Ohio Supreme Court noted that Ohio follows the "all sums" approach to allocation of insurance-coverage responsibility where a claimed loss involving long-term exposure and delayed-manifestation injury (such as an asbestos-related claim) implicates numerous insurance

policies over multiple policy periods. The *Goodyear* court explained that in such situations, because the insured expected complete security from each policy that it purchased, "the insured is entitled to secure coverage from a single policy of its choice that covers 'all sums' incurred as damages 'during the policy period,' subject to that policy's limits of coverage. In such an instance, the insurers bear the burden of obtaining contribution from other applicable primary insurance policies as they deem necessary." Id. at ¶ 11.

■ {¶ 20} In short, each insurer on the risk between the initial exposure and the manifestation of disease or death is fully liable to the insured for indemnification and defense costs. In order to afford the insured the coverage promised by the insurance policies, the insured is free to select the policy or polices under which it is to be indemnified. "This approach promotes economy for the insured while still permitting insurers to seek contribution from other responsible parties when possible." Id. at ¶ 11.

## C. Equitable Contribution in General

■ {¶ 21} Contribution is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement. *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus, overruled on other grounds *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.* (1995), 73 Ohio St.3d 391, 653 N.E.2d 235. The general rule of contribution is that "one who is compelled to pay or satisfy the whole to bear more than his or her just share of a common burden or obligation, upon which several persons are equally liable * * * is entitled to contribution against the others to obtain from them payment of their respective shares." 18 American Jurisprudence 2d (2004), Contribution, Section 1. The doctrine "rests upon the broad principle of justice, that where one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a ratable proportion." *Baltimore & Ohio RR. Co. v. Walker* (1888), 45 Ohio St. 577, 588, 16 N.E. 475. Since the doctrine of contribution has its basis in the broad principles of equity, it should be liberally applied. Id. Equity "cannot be determined by any [fixed] rule, but depends upon the peculiar facts and equitable considerations of each case." *Tiffin v. Shawhan* (1885), 43 Ohio St. 178, 1 N.E. 581, paragraph one of the syllabus.

## D. Application of These Principles to This Case

{¶ 22} Pennsylvania General asserts four assignments of error. Briefly summarized, Pennsylvania General argues that it should not be penalized because its

insured, Park–Ohio, did not comply with contractual provisions of contracts to which Pennsylvania General was not a party. It argues further that the overwhelming equities favor Pennsylvania General's contribution claim, because Pennsylvania General resolved the DiStefano claim in accordance with the terms and conditions of its policies and applicable law: it honored its contractual obligations to its policyholder, complied with the letter and spirit of *Goodyear* by paying the entirety of the claim, and then timely pursued its equitable contribution claim against the nonselected insurers.

{¶ 23} Nationwide and Continental respond that they owe no coverage to Park–Ohio because Park–Ohio failed to give them prompt notice of the DiStefano claim and settled without their approval in violation of their policy provisions. Therefore, they contend, they share no common liability with Pennsylvania General that would give rise to an equitable-contribution claim. They argue further that it is not equitable to allow Pennsylvania General to obtain contribution because Pennsylvania General did not give them reasonable notice of the DiStefano suit or its potential contribution claim, which prejudiced their ability to participate in the defense and settlement of the DiStefano suit.

{¶ 24} We begin by observing that despite the trial court's finding to the contrary, *Goodyear* is not the controlling authority in this matter. Although *Goodyear* indicates that Ohio follows the all-sums approach in apportioning available insurance coverage when multiple policies are triggered to cover the same long-term injury or loss, it does not address the issue presented by this case: may one insurer, who was selected by the insured to indemnify its loss and who paid the entire settlement amount to the insured, recover by contribution from other insurers who were similarly liable on the claim but not selected by the insured, and who had no knowledge of the loss or payment until the demand for contribution was made? We hold, on these facts, that it may.

{¶ 25} At the outset, we recognize that "[c]ontribution rights, if any, between two or more insurance companies insuring the same event are not based on the law of contracts. This follows from basic common sense, because the contracts entered into are formed between the insurer and the insured, not between two insurance companies. Accordingly, whatever rights the insurers have against one another do not arise from contractual undertakings. * * * Instead, whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles." *Maryland Cas. Co. v. W.R. Grace & Co.* (2000), 218 F.3d 204, 210–211.

{¶ 26} Thus, we reject Nationwide and Continental's argument, and the trial court's finding, that Park–Ohio's policy breaches (specifically, its failure to give Nationwide and Continental timely notice of the DiStefano suit, failure to

assist and cooperate with a defense, and voluntary payment) somehow preclude Pennsylvania General's contribution claim against them. This is not a contract action: Pennsylvania General's equitable-contribution claim does not arise out of the policies between Park–Ohio and Nationwide and Continental, so Park–Ohio's conduct with respect to those policies can not "waive" any contribution rights that Pennsylvania General might have against those insurers.

{¶ 27} Further, under the all-sums approach adopted by the Ohio Supreme Court in *Goodyear*, Park–Ohio had no duty to notify Nationwide and Continental of the DiStefano claim. As set forth in *Goodyear*, Park–Ohio could, as it did, select one insurer from the triggered policies to pay the entire claim and then leave that insurer to pursue a contribution claim from Park–Ohio's other insurers.

{¶ 28} Applying equitable principles, we are similarly unpersuaded by Nationwide and Continental's argument that Pennsylvania General is not entitled to contribution because it failed to timely notify them of the DiStefano matter and its potential contribution claim and failed to insist on compliance with its policy terms (which are nearly identical to the policies Park–Ohio had with Nationwide and Continental) to void coverage.

{¶ 29} With respect to notice, the stipulated facts demonstrate that despite repeated requests for "other insurance" information from Park–Ohio, Pennsylvania General was unable to obtain information regarding other insurers from Park–Ohio until finally, after motion practice, the court ordered Park–Ohio to produce the information. Pennsylvania General then contacted the other insurers within weeks of learning of their existence and sought contribution for the DiStefano claim. On these facts, any argument that Pennsylvania General was not diligent in pursuing other insurance information and preserving its equitable contribution action is without merit.

{¶ 30} Further, applying equitable principles to these facts, we cannot discern, nor have Nationwide and Continental demonstrated, any prejudice arising from Pennsylvania General's notice. Nationwide and Continental argue, and the trial court agreed, that Pennsylvania General's failure to notify them of the DiStefano matter in the six weeks between Pennsylvania General's learning of the case and Park–Ohio's early settlement prejudiced them because they were unable to participate in the defense and settlement of the lawsuit. But the all-sums approach adopted by the Ohio Supreme Court in *Goodyear* anticipates exactly this approach.

{¶ 31} Under the all-sums approach, only the insurer selected by the insured defends the insured and participates in the underlying tort-claim litigation. *Keene Corp. v. Ins. Co. of N. Am.* (C.A.D.C.1981), 667 F.2d 1034, 1051 (cited with approval in *Goodyear* ). The duty of that insurer is to defend the

insured, not to minimize its own liability. Id. Any disputes about insurance coverage are to be resolved separately from the underlying tort claim to minimize undue inconvenience to the victim and to avoid the possibility that the victim's tort suit becomes "an unwieldy spectacle" in which groups of insurers pursue disputes with each other. Id.

{¶ 32} In light of *Goodyear* and *Keene,* Nationwide and Continental, as nontargeted insurers, had no right to participate in the litigation and defense of the DiStefano matter, so they could not have been prejudiced by Pennsylvania General's failure to notify them of the suit and allow their participation in it.

{¶ 33} Likewise, Pennsylvania General had no obligation to notify Nationwide and Continental of its potential equitable-contribution claim prior to settlement of the DiStefano matter. A cause of action for equitable contribution arises only after one under a legal duty has been compelled to pay more than his or her share of a common burden. 18 American Jurisprudence 2d (2004), Contribution, Section 9. Thus, Pennsylvania General was not required to seek contribution from Nationwide and Continental until the DiStefano claim was fully and finally resolved in November 2005. Nevertheless, Pennsylvania General did more than what was required to preserve and pursue its equitable-contribution claim. Within weeks after learning of Park–Ohio's other insurers, it notified Nationwide and Continental of its intention to seek contribution for monies paid to Park–Ohio in September 2004, more than a year before it made its final payment to Park–Ohio. We fail to discern any prejudice to Nationwide and Continental by this timely notice.

{¶ 34} Likewise, we are not persuaded by Nationwide and Continental's argument that Pennsylvania General is not entitled to contribution because it failed to insist on compliance with the notice, cooperation, and voluntary payment provisions of its policies. In short, Nationwide and Continental argue that it is not equitable to allow Pennsylvania General to impose its coverage, litigation, and settlement decisions on them as nonselected insurers. But, as already discussed, the all-sums approach anticipates this very result.

{¶ 35} Further, the stipulated facts in the record demonstrate that Pennsylvania General exercised or reserved all of its policy rights. When Pennsylvania General was presented with Park–Ohio's claim in late August 2002, the DiStefano matter was set for trial approximately six weeks later. Pennsylvania General immediately begin its investigation of the claim and sought information about its own alleged policies; the policies of other potential insurers of Park–Ohio; the viability of any defenses of Park–Ohio to the plaintiff's claim; the range of monetary exposure of Park–Ohio; the competence of underlying defense counsel for Park–Ohio; whether and, if so, to what extent coverage might be owed to Park–Ohio; and the viability of any possible defenses to coverage. To assist in

its evaluation of the DiStefano claim of Park–Ohio, Pennsylvania General hired Henry Rome, an attorney experienced in asbestos matters.

{¶ 36} As a result of its investigation, Pennsylvania General determined that Park–Ohio's underlying defense counsel were experienced and well respected; Park–Ohio did not have strong defenses to the DiStefano claim; Park–Ohio was the sole remaining viable defendant; the case presented a "dangerous multi-million dollar exposure" to Park–Ohio; and the $1 million settlement amount was in line with similar cases in the jurisdiction. In addition, Rome counseled Pennsylvania General that there was not a strong basis upon which to assert a late-notice defense. Pennsylvania General heeded its counsel's advice regarding the futility of pursuing a late-notice defense and challenging the amount of the settlement, although prior to its issuance of any payment to Park–Ohio, Pennsylvania General reserved all of its rights under its policies.

{¶ 37} The stipulated facts demonstrate that Pennsylvania General appropriately investigated, handled, and resolved the DiStefano claim in accordance with the terms and conditions of its policies. We find nothing to indicate that the fact or amount of the settlement would have been any different if Nationwide or Continental, with policies nearly identical to Pennsylvania General's, had been selected by Park–Ohio and presented with the DiStefano claim, as there simply were not any viable defenses to coverage.

{¶ 38} Neither Nationwide nor Continental has asserted any exclusion that would preclude coverage under their policies to Park–Ohio. Both have conceded that their policies were triggered by the DiStefano claim and that the essential terms, conditions, and exclusions of the Nationwide, Continental, and Pennsylvania General policies are nearly identical. Therefore, the equities demand that Nationwide and Continental, as co-insurers who shared a common liability with Pennsylvania General and who lost no rights nor suffered any prejudice by resolution of the DiStefano claim, pay Pennsylvania General their respective pro rata shares of defense costs and indemnity paid by Pennsylvania General on behalf of Park–Ohio in the DiStefano matter. To rule otherwise would allow Nationwide and Continental to be unjustly enriched at the expense of Pennsylvania General.

{¶ 39} Public policy also demands this result. To allow the insured to unilaterally extinguish all potential sources of contribution renders illusory the right of contribution established in *Goodyear*. We do not believe that it was the intention of *Goodyear* to condition a targeted insurer's right to contribution on the action or inaction of the insured and leave the targeted insurer without recourse. Further, we do not want to discourage the prompt settlement of insurance claims. To hold that Pennsylvania General should not have made any payments to Park–Ohio unless and until all other potentially triggered insurers

had been identified and notified of the DiStefano claim would discourage the prompt resolution of these claims by the insurers. In future cases, the targeted insurer would be reluctant to resolve the claim until all other potentially triggered insurers had been identified and notified about the claim. This would delay or prevent settlements that would otherwise occur, contrary to the intent of *Goodyear* and the all-sums approach.

{¶ 40} The Ohio Supreme Court requires insurers to be vigilant in recognizing and fulfilling their contractual obligations. See, e.g., *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140. Pennsylvania General did just that. It investigated, handled, and resolved the DiStefano claim in accordance with the terms and conditions of its policies, and, in compliance with *Goodyear*, paid the entirety of the claim and timely pursued its equitable contribution claim against the nonselected insurers. It should not be penalized for doing so.

{¶ 41} Because the trial court did not agree that Pennsylvania General was entitled to equitable contribution, it did not reach the issue of what share of the DiStefano claim should be assigned to Nationwide and Continental. Pennsylvania General asks this court to apply its chosen method of allocating loss and determining prejudgment interest and order Nationwide and Continental to pay a sum certain as calculated by Pennsylvania General. As the trial court did not decide this issue, we do not address it for the first time on appeal. *Republic Steel Corp. v. Hailey* (1986), 30 Ohio App.3d 103, 108, 30 OBR 202, 506 N.E.2d 1215.

{¶ 42} Appellant's assignments of error are sustained. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed  
and cause remanded.

SWEENEY, A.J., and STEWART, J., concur.