PENNSYLVANIA GENERAL INSURANCE COMPANY, APPELLEE, *v.* PARK-OHIO
INDUSTRIES; NATIONWIDE INSURANCE COMPANY ET AL., APPELLANTS.

[Cite as *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries,*

**126 Ohio St.3d 98, 2010-Ohio-2745.]**

*Insurance — Equitable contribution among multiple insurers — Insured's duty to*
*cooperate with insurer targeted for full payment — Failure to notify*
*nontargeted insurers of claim.*

(No. 2009-0104 — Submitted December 2, 2009 — Decided June 22, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 90619,

179 Ohio App.3d 385, 2008-Ohio-5991.

_____

**SYLLABUS OF THE COURT**

1. When loss or damage occurs over time and involves multiple insurance-policy
   periods and multiple insurers, a claim may be made by the targeted insurer
   against a nontargeted insurer with applicable insurance policies for
   contribution. (*Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95
   Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, followed.)

2. When the targeted insurer requests information from the insured regarding
   other policies that may also cover the claim, the insured has a duty to
   cooperate with the targeted insurer by identifying those policies; but
   failure to timely notify a nontargeted insurer of a pending claim does not
   automatically make that insurer's policy inapplicable for contribution to
   the targeted insurer. (*Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur.
   Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, explained.)

3. Lack of notification to a nontargeted insurer will bar the targeted insurer's
   claim for contribution against that nontargeted insurer only if the failure to

notify resulted in prejudice to that nontargeted insurer. (*Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, explained.)

———————————

**LANZINGER, J.**

{¶ 1}   This appeal addresses issues regarding the allocation of insurance coverage among multiple insurers in cases in which loss or injury is caused over a period of time ("progressive injury") and multiple insurance policies cover that time frame.   This court has adopted an allocation approach known as "all-sums" in *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835.   Although the parties ask us to overrule the case and adopt the competing pro rata approach, we decline to do so in this case.

{¶ 2}   We continue to adhere to the all-sums method of allocation adopted in *Goodyear*, while emphasizing that the insured has a duty to cooperate with the targeted insurer.   Recognizing the need to clarify *Goodyear*, we hold that when the targeted insurer requests information regarding other policies that may cover the claim, the insured has a duty to cooperate by identifying any such policies.   In the event that a nontargeted insurer is not timely notified of a claim, a targeted insurer's contribution claim against that nontargeted insurer will be barred only if the failure to notify resulted in prejudice to the nontargeted insurer. Although there was a delay in notification to the nontargeted insurers in the present case, we affirm the decision of the Eighth District Court of Appeals because this delay did not result in prejudice to those insurers.

## I. Case Background

{¶ 3}   George DiStefano filed suit for asbestos-related injuries against Park-Ohio Industries, Inc. ("Park-Ohio") and other defendants in the Superior Court of California in March 2002 after being diagnosed with mesothelioma.   In August 2002, Park-Ohio notified one of its insurers, appellee Pennsylvania

General Insurance Company ("Penn General") of the action, and in September 2002, Penn General's representative retained attorney Henry Rome to handle the DiStefano litigation. Park-Ohio settled DiStefano's case the next month, without Penn General's formal consent, agreeing to pay $1 million in exchange for a full release and dismissal of the lawsuit. After reviewing the terms, Penn General's counsel concluded that the $1 million settlement between Park-Ohio and DiStefano was reasonable for several reasons: In similar mesothelioma cases, local juries had recently awarded verdicts in the $3-million-to-$5-million range, Park-Ohio's evaluation report indicated that a conservative verdict in the DiStefano case could reach $5 million to $6 million, and DiStefano's previous settlement demand had been $3 million. The settlement in DiStefano's lawsuit against Park-Ohio was finalized in October 2002.

{¶ 4} In September 2003, Park-Ohio filed a complaint for declaratory judgment against Penn General as its insurer, in the Cuyahoga County Court of Common Pleas, seeking a declaration that Penn General was obligated to defend Park-Ohio in the DiStefano lawsuit and that Penn General owed Park-Ohio indemnification for the full amount of the DiStefano settlement, compensatory damages for damages, attorney fees, expenses, loss, and costs, and punitive damages. During the litigation, Penn General had paid $250,000 to Park-Ohio as the full per-person bodily-injury limit of one of the policies at issue in the suit. But not until July 2004 did Park-Ohio's counsel notify Penn General's counsel that other insurance policies were discovered covering the time frame in which DiStefano's injuries were alleged to have occurred. Until Park-Ohio as the insured produced these documents, Penn General had no knowledge of any other comprehensive general liability insurance coverage available during the dates relevant to the DiStefano case because Park-Ohio maintained sole control of this information.

{¶ 5} Within two months of discovering the identity of other insurers, Penn General mailed letters providing notification of the DiStefano claim to appellant Nationwide Insurance Company, appellant Continental Casualty Company,[1] and Travelers Casualty and Surety Company. Each notification letter stated that Penn General assumed but wished to confirm that Park-Ohio had notified the insurer of the DiStefano claims. Penn General also stated that it requested reimbursement from the insurer for litigation defense and indemnification paid and reserved the right to file an action for contribution from the insurer. In October 2004, Penn General filed the present action against Park-Ohio for a declaratory judgment and against Nationwide, Continental, and Travelers seeking equitable contribution, indemnification, and a declaratory judgment.

{¶ 6} The earlier suit by Park-Ohio against the targeted insurer, Penn General, was settled in November 2005. Penn General paid an additional $750,000, which, added to the $250,000 previously paid, totaled $1 million in payments to Park-Ohio and resulted in full payment of the DiStefano settlement. Soon after that settlement, Penn General also dismissed Park-Ohio from the present action.

{¶ 7} Nationwide and Continental denied any obligation for contribution. Travelers settled with Penn General before trial and is no longer a party to the case. After a bench trial, the trial court found that Nationwide and Continental had no obligation to indemnify or defend Park-Ohio from the DiStefano claims

---

1. The conditions section in Continental's policy states: "4. Insured's Duties in the Event of Occurrence, Claim or Suit: (a) In the event of an occurrence, written notice * * * shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. * * * (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative. (c) * * * The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident." The relevant portions of the insurance policies issued to Park-Ohio by Nationwide are virtually identical.

because Park-Ohio had breached the notification provisions of their policies, relieving the insurers of the obligation to indemnify or reimburse Penn General for any portion of the DiStefano settlement because they were "effectively prejudiced." Furthermore, the trial court found that Penn General did not take reasonable measures to preserve its contribution rights and did not notify the two other insurers in a timely and reasonable manner.

{¶ 8} On appeal, Penn General argued that (1) Park-Ohio's failure to comply with contracts to which Penn General was not a party should not defeat Penn General's contribution claim, (2) the DiStefano claim was resolved in accordance with its contractual obligations to Park-Ohio, and (3) because it had complied with *Goodyear*, the equities of the case favored Penn General's contribution claim. The nontargeted insurers, Nationwide and Continental, responded that (1) they owed no coverage to Park-Ohio because their insured failed to provide them with prompt notice of the DiStefano claim, which was a breach of their contracts, (2) settlement of the claim without their approval breached the contracts, (3) Penn General's failure to give reasonable notice of the suit and claim prejudiced their ability to participate in the DiStefano suit, and (4) they shared no common liability with Penn General and had no liability for contribution.

{¶ 9} The Eighth District Court of Appeals reversed the judgment in favor of the nontargeted insurers and held that *Goodyear* controlled and that Penn General was entitled to contribution from Nationwide and Continental. 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53. Responding to Nationwide and Continental's argument that contribution is precluded by Park-Ohio's failure to comply with their insurance policies, the court of appeals noted that this case is not a contract action and that Penn General's claim sounds in equity. Because the *Goodyear* rule does not give Nationwide and Continental a right to participate in the DiStefano litigation, the appellate court concluded that the insurance

companies were not prejudiced by Park-Ohio's failure to notify them of the claim. The court also held that because Penn General notified Nationwide and Continental of its intention to seek contribution from them within weeks of learning of Park-Ohio's other insurers, it did not lose its right to contribution from the nontargeted insurers. The court of appeals also concluded that the settlement was fair to all parties and that Penn General appropriately handled the claim.

{¶ 10} We accepted jurisdiction over the first proposition of law in appellants' discretionary appeal, which states, "No claim for contribution can be made against a nontargeted insurer pursuant to *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, unless its policy is 'applicable.' In order for the policy to be 'applicable' to a claim, there must be full compliance with all terms and conditions of coverage in the nontargeted insurer's policy." 121 Ohio St.3d 1472, 2009-Ohio-2045, 905 N.E.2d 653. In other words, appellants seek to define "applicable" to allow nontargeted insurers to escape from liability for contribution unless they have been brought into a lawsuit from the beginning.

## II. Legal Analysis

### A. *The All-Sums Approach of Goodyear*

{¶ 11} In *Goodyear*, this court was asked to decide whether Ohio law requires the use of the all-sums approach (joint and several liability) or the pro rata approach (time on the risk) to allocate insurance coverage for progressive injuries or damages among multiple insurers. The all-sums approach allows an insured "to seek full coverage for its claims from any single policy, up to that policy's coverage limits, out of the group of policies that has been triggered." *Goodyear*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 6. The insured selects one insurer (the "targeted insurer"), from which it is able to obtain a defense to the action and full coverage for any eventual judgment. The targeted insurer is then able to file a later action against any other insurers (the

"nontargeted insurers") to obtain contribution. The pro rata approach, on the other hand, requires an insurer to pay "only a portion of a claim based on the duration of the occurrence during its policy period in relation to the entire duration of the occurrence." Id.[2]

{¶ 12} We adopted the all-sums approach and held that "when a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers 'all sums' incurred as damages 'during the policy period,' subject to that policy's limit of coverage." Id. at ¶ 11. In such an instance, any targeted insurer bears the burden of obtaining contribution from other applicable primary insurance policies as it deems necessary. Id. In explaining our decision to adopt the all-sums approach, we stated that "[t]his approach promotes economy for the insured while still permitting insurers to seek contribution from other responsible parties when possible." Id.

{¶ 13} Appellants argue that Park-Ohio's failure to notify them as nontargeted insurers of the DiStefano litigation violated the terms of their insurance policies and precludes coverage under *Goodyear*. They reason that *Goodyear* allows for contribution only when a policy is applicable, and a policy is applicable only when the insured has complied fully with the terms of the insurance policy.

*B. The Delay in Notifying the Targeted Insurers Was Not Unreasonable*

{¶ 14} We noted in *Goodyear* that when an insurance policy contains a notice provision, the insured must comply with that provision. "Notice provisions in insurance contracts are conditions precedent to coverage, so an insured's failure

---

2. For example, consider an insured who is insured for a four-year period, with Insurer A providing coverage in the first and second years, Insurer B providing coverage in the third year, and Insurer C providing coverage in the fourth year. Under the all-sums approach, the insured could select Insurer A as the targeted insurer and obtain full coverage. Insurer A could then seek contribution from Insurer B and Insurer C for those insurers' share of the coverage. Under the pro rata method, each insurer's liability is determined by its time on the risk.

to give its insurer notice in a timely fashion bars coverage." *Goodyear*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 14. Despite this statement, the *Goodyear* decision did not detail how the equitable all-sums approach to allocation affects contractual duties set forth in insurance policies. The court did, however, look to prior decisions for the definition of "timely" notice, stating that if notice is required to be given "as soon as practicable," it must be given " 'within a reasonable time in light of all the surrounding facts and circumstances.' " Id., quoting *Ormet Primary Aluminum Corp. v. Emps. Ins. of Wausau* (2000), 88 Ohio St.3d 292, 725 N.E.2d 646, syllabus.

{¶ 15} Appellants cite *Ormet* as support for their proposition that the delay in giving notice to appellants was unreasonable and resulted in prejudice due to their inability to be involved with the DiStefano litigation and settlement. In *Ormet*, the insured first learned of potential environmental problems in 1966. *Ormet* at 301. The United States Environmental Protection Agency had identified the insured as a potentially responsible party for contamination with possible liability for all cleanup costs at its site in 1986. Id. at 302. In 1987, the insured signed a settlement agreement with the United States EPA and the Ohio EPA but then delayed sending notice to its insurers until 1992. Id. We held that the insurers had demonstrated actual prejudice because a number of key witnesses had died since the events giving rise to the litigation and a number of other witnesses admitted that their memories of the events had substantially faded. Id. at 303-304. No insurer had notice of the proceedings until five years after the settlement agreement had been signed. Id.

{¶ 16} In *Goodyear*, we concluded that *Ormet* was distinguishable on its facts because the insured in *Ormet* did not notify its insurers until six years after being identified by the EPA and five years after entering into a settlement agreement dictating the terms of an environmental cleanup. *Goodyear*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 15-17. *Ormet* is similarly

8

distinguishable here. The DiStefano lawsuit was filed in March 2002, Park-Ohio notified Penn General of the pending litigation in August 2002, Park-Ohio settled the DiStefano litigation in October 2002, Park-Ohio filed suit against Penn General as a targeted insurer in September 2003, Park-Ohio notified Penn General of the nontargeted appellants' policies in July 2004, and Penn General notified the nontargeted appellants of the claim in September 2004.

{¶ 17} Unlike the insured in *Ormet*, which failed to notify any insurer until five years after signing the settlement agreement, Park-Ohio placed Penn General on notice while the DiStefano litigation was still pending. In accordance with *Goodyear*, Park-Ohio selected Penn General as the targeted insurer, and Penn General provided notification of the claim to appellants approximately two months after being notified of appellants' policies. Because *Goodyear* created an equitable approach to the unique situation surrounding the allocation of liability in progressive-injury cases, Park-Ohio's notice to appellants can be seen as being "within a reasonable time in light of all the surrounding facts and circumstances" under *Ormet*.

### C. Appellants Did Not Suffer Prejudice and Are Liable for Contribution

{¶ 18} It must be emphasized that the all-sums allocation method established in *Goodyear* is a remedy that is equitable in nature, and we must now consider how the nontargeted insurers' contractual right to notice must be treated in light of the equitable all-sums approach. In *Goodyear*, we stated that the all-sums approach "promotes economy for the insured while still permitting insurers to seek contribution from other responsible parties when possible." Id. at ¶ 11. The Eighth District was correct when it noted that no privity of contract existed between Penn General and appellants Nationwide and Continental. The Nationwide and Continental insurance policies were contracts between those insurers and Park-Ohio. It would be inequitable to hold that Park-Ohio's failure to abide by the notice provisions in the Nationwide and Continental policies

eliminates Penn General's right to contribution, given the equitable nature of the all-sums approach to allocation and the fact that Penn General followed the procedure established in *Goodyear* during the litigation.

{¶ 19} In keeping with the equitable nature of the all-sums approach to allocation, we clarify *Goodyear* by stating that the insured has a duty to cooperate with the targeted insurer. While *Goodyear* allows the insured to choose a targeted insurer from which it may recover a full amount of indemnification, this does not mean that the insured may engage in tactics to delay or obstruct the targeted insurer in the process of obtaining contribution from nontargeted insurers. When the targeted insurer requests information from the insured regarding other policies that may also cover the claim, the insured has a duty to cooperate by identifying those policies. The failure to notify nontargeted insurers will not necessarily foreclose contribution from nontargeted insurers to the targeted insurer.

{¶ 20} If the failure to notify nontargeted insurers pursuant to the relevant insurance policies results in prejudice to the nontargeted insurers, then the nontargeted insurers will not be required to contribute to the targeted insurer. In cases in which the nontargeted insurers have not been prejudiced by a failure to notify, the equitable nature of the all-sums approach requires that those nontargeted insurers will still be liable in a contribution action brought by the targeted insurer.

{¶ 21} Appellants argue that Penn General should be barred from obtaining contribution because Park-Ohio's delay in notification resulted in prejudice to appellants. "An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, paragraph one of the syllabus. Nationwide and Continental assert that they were prejudiced because they had no opportunity to defend their interests in the DiStefano matter, including investigating the claim, choosing counsel, and

determining litigation and settlement strategies. These facts, however, do not amount to prejudice, as they are the natural result of *Goodyear*'s all-sums approach, which was designed to streamline the recovery process for the insured by permitting the insured to choose one primary targeted insurer with which to deal during the litigation. The decision in *Goodyear* presupposes that some insurers might not receive an opportunity to sit at the negotiation table and that those insurers must wait for a resolution in the underlying case. Furthermore, as noted above, Park-Ohio's delay in notifying Nationwide and Continental was not unreasonable, because the delay occurred while Park-Ohio and Penn General moved through the all-sums procedures established in *Goodyear*. Because *Goodyear* remains viable, Park-Ohio and Penn General's adherence to the all-sums approach does not in and of itself result in prejudice to the nontargeted insurers.

{¶ 22} While it is true that Nationwide and Continental did not receive notification of the DiStefano suit until two and a half years after that suit was filed, they were not prejudiced by the delay. The terms of the settlement were reasonable. As noted in attorney Rome's report, the $1 million settlement was far below the $3-million-to-$5-million range of recent jury verdicts in similar cases and the previous $3 million settlement offer. Furthermore, any delay in notifying Nationwide and Continental was not unreasonable. Considering the *Goodyear* rule, Nationwide and Continental were not to become involved in the case until Penn General brought its contribution action, which it accordingly did in October 2004. Because the DiStefano settlement was reasonable and because the delay in notifying Nationwide and Continental occurred while Penn General followed the approach established in *Goodyear*, we hold that appellants were not prejudiced by Park-Ohio's failure to provide timely notification.

**{¶ 23}** Because we hold today that Nationwide and Continental have not been prejudiced in this case, we do not address the issue of what consequences might result if a nontargeted insurer is prejudiced by an insured's failure to notify.

### III. Conclusion

**{¶ 24}** When loss or damage occurs over time and involves multiple insurance-policy periods and multiple insurers, a claim may be made by the targeted insurer against a nontargeted insurer with applicable insurance policies for contribution. We therefore affirm the holding of the court of appeals that *Goodyear* controls in this case. However, we do explain *Goodyear* to make clear that when the targeted insurer requests information from the insured regarding other policies that may also cover the claim, the insured has a duty to cooperate with the targeted insurer by identifying those policies; but failure to timely notify a nontargeted insurer of a pending claim does not automatically make that insurer's policy inapplicable for contribution to the targeted insurer. Lack of notification to a nontargeted insurer will bar the targeted insurer's claim for contribution against that nontargeted insurer only if the failure to notify resulted in prejudice to that nontargeted insurer. Because appellants were not prejudiced, we affirm the decision of the Eighth District Court of Appeals.

Judgment affirmed.

PFEIFER, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

BROWN, C.J., not participating.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

**{¶ 25}** I concur in the clarification of *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, in this case. However, I respectfully dissent from the majority's legal conclusion that the appellants were not prejudiced by Park-Ohio's failure to provide timely

notification of the DiStefano lawsuit. In light of the clarification of *Goodyear*, I believe that we should remand this case for the trial court to conduct an inquiry into the actual prejudice, if any, suffered by Nationwide and Continental as a result of the delay.

{¶ 26} The trial court decided this issue on contractual grounds, finding that because Nationwide and Continental did not get notice of the DiStefano lawsuit until almost two years after the case was settled, they were "effectively prejudiced" by the failure of notice and the settlement of the case. However, the trial court made no factual findings of actual prejudice.

{¶ 27} The court of appeals likewise made sweeping legal conclusions regarding prejudice without a factual record before it. The appellate court merely concluded that "applying equitable principles to these facts, we cannot discern, nor have Nationwide and Continental demonstrated, any prejudice arising from Pennsylvania General's notice." 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53, ¶ 30. In addition, the court concluded that Nationwide and Continental had no right to participate in the DiStefano litigation; thus, they could not have been prejudiced by the inability to participate. Id. at ¶ 32.

{¶ 28} Now this court also concludes that there is an absence of prejudice despite no factual findings to support its conclusion. I believe that the parties are entitled to an opportunity to litigate the issue of actual prejudice. They may be unable to establish actual prejudice, but after having clarified that as the appropriate standard, we then deny the insurers the right to a hearing on the issue. Although the settlement may be reasonable, that alone does not establish the absence of prejudice. There are other issues, such as the destruction of subrogation rights.

{¶ 29} There is no question that Park-Ohio breached its contractual duties to Nationwide and Continental. I believe we should remand for the parties to

litigate the issue of actual prejudice resulting from the breach of duty under the standards set forth today.

_____

Davis & Young and Richard M. Garner; and Christie Parabue Mortensen Young and Elaine Whiteman Klinger, for appellee.

Mazanec, Raskin, Ryder & Keller Co., L.P.A., John T. McLandrich, Thomas S. Mazanec, and Frank H. Scialdone, for appellant Nationwide Insurance Company.

Troutman Sanders, L.L.P., and Rebecca L. Ross; Quinn, Emanuel, Urquhart, Oliver & Hedges, L.L.P., Kathleen M. Sullivan, and Jane M. Byrne; and Gallagher Sharp, Paul J. Schumacher, and Timothy Fitzgerald, for appellant Continental Casualty Company.

Brouse McDowell, Paul A. Rose, Sallie Conley Lux, and Amanda M. Leffler, for amici curiae Ohio Manufacturers' Association, Bridgestone Americas Tire Operations, L.L.C., Dana Holding Corporation, Day-Glo Color Corporation, Goodrich Corporation, Goodyear Tire & Rubber Company, Lincoln Electric Company, Lubrizol Corporation, Pilkington North America, Inc., Procter & Gamble Company, RPM, Inc., Resco Holdings, L.L.C., Sherwin-Williams Company, Tremco Incorporated, and United Policyholders.

Frantz Ward, L.L.P., Stephen F. Gladstone, and Brendan M. Gallagher, urging reversal for amicus curiae Complex Insurance Claims Litigation Association.

Duane Morris, L.L.P., Phillip R. Matthews, and William J. Baron, urging reversal for amicus curiae Great American Insurance Company.

Thomson Hine, L.L.P., Alan F. Berliner, and Phillip B. Sineneng, urging reversal for amicus curiae The Ohio Insurance Institute.

_____