[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lubrizol Advanced Materials, Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.*, Slip Opinion No. 2020-Ohio-1579.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1579

LUBRIZOL ADVANCED MATERIALS, INC., *v.* NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lubrizol Advanced Materials, Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.*, Slip Opinion No. 2020-Ohio-1579.]**

*Insurance—No allocation of liability across multiple insurers and policy periods when injury or damage for which liability coverage is sought occurred at a discernible time.*

(No. 2018-1815—Submitted January 7, 2020—Decided April 23, 2020.)

ON ORDER from the United States District Court for the Northern District of Ohio, Eastern Division, Certifying a Question of State Law, No. 1:17-cv-01782-DAP.

_____

**O'CONNOR, C.J.**

{¶ 1} This case is before us on the certification of a state-law question by the United States District Court for the Northern District of Ohio, Eastern Division. The federal court asks that we determine whether an insured is permitted to seek

full and complete indemnity, under a single policy providing coverage for "those sums" that the insured becomes legally obligated to pay because of property damage that takes place during the policy period, when the property damage occurred over multiple policy periods.

{¶ 2} We answer the certified state-law question in the negative. However, because the terms of the contract and the circumstances surrounding the liability control, we caution against using our answer to the question as a blanket rule applicable to all policies with "those sums" language.

**Relevant Background**

{¶ 3} The federal court provided the following facts and allegations from which the question of law arises. Petitioner, Lubrizol Advanced Materials, Inc. ("Lubrizol"), manufactured and sold allegedly defective resin to IPEX, Inc., between 2001 and 2008. IPEX used the resin to make pipes for its Kitec plumbing systems that were sold to consumers in the United States and Canada. These pipes failed, resulting in numerous claims against IPEX for selling defective pipes. IPEX settled the claims, but it sued Lubrizol alleging negligence, breach of contract, and breach of warranty on the basis that Lubrizol knew or should have known the resin it sold to IPEX was not fit or suitable for the resin's intended purpose of being used in pipes. IPEX sought complete indemnification from Lubrizol. IPEX and Lubrizol settled their claims.

{¶ 4} Subsequently, Lubrizol sued respondent National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), which insured Lubrizol pursuant to an umbrella policy effective February 28, 2001, to February 28, 2002. Other insurers provided coverage to Lubrizol at various points during the time in which Lubrizol sold the allegedly defective resin to IPEX. The language in those policies and the scope of their coverage is not at issue in this action.

{¶ 5} Lubrizol argued that under Ohio law, all of its triggered insurance policies should be treated as establishing joint and several liability, such that

Lubrizol could recover under the policy of its choice. Accordingly, Lubrizol claimed it was entitled to recover all amounts it paid to defend and settle IPEX's claims, less the underlying policy limits and retention amount. Specifically, Lubrizol sought an order requiring National Union to pay all defense costs incurred in defending the IPEX lawsuit, the amounts Lubrizol paid to settle the IPEX action, and past and future anticipated defense costs by Lubrizol in defending related litigation.

{¶ 6} National Union filed a counterclaim against Lubrizol, seeking a declaration that Lubrizol is not entitled to allocate all defense costs and indemnity to a single policy period when multiple policies and corresponding policy periods were triggered.

{¶ 7} The National Union insurance policy states, in relevant part:

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

**The State Law Question**

{¶ 8} While attempting to mediate their claims, National Union and Lubrizol notified the federal court that they disagreed about the appropriate allocation method to be used and that an answer to that question would allow them to make significant progress toward a settlement. The parties submitted a Joint

Proposed Order Certifying a State Law Question to the district court, which then certified the following question to this court:

> Whether an insured is permitted to seek full and complete indemnity, under a single policy providing coverage for "those sums" the insured becomes legally obligated to pay because of property damage that takes place during the policy period, when the property damage occurred over multiple policy periods.

We agreed to answer the question. 154 Ohio St.3d 1519, 2019-Ohio-768, 118 N.E.3d 257.

## Applicable Rules of Contract Interpretation

{¶ 9} The governing principle in contract interpretation is to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37.

## Lubrizol's Argument

{¶ 10} Lubrizol argues that the court should follow its precedent in *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, and *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries*, 126 Ohio St.3d 98, 2010-Ohio-2745, 930 N.E.2d 800. In *Goodyear*, we considered the allocation of insurance coverage among multiple insurers for pollution cleanup costs at several waste-disposal sites when the policy language of one of the insurers required the insurer to " 'pay on behalf of the insured *all sums* which the insured shall become legally obligated to pay as damages because of

4

* * * property damage to which this policy applies caused by an occurrence.' " (Emphasis added in *Goodyear.*) *Goodyear* at ¶ 7, quoting the policy language at issue in that case. The policy defined "property damage" as " 'injury to or destruction of tangible property *which occurs during the policy period.*' " (Emphasis added in *Goodyear.*) *Id.* The court held that the plain language of the "all sums" provision was "inclusive of all damages resulting from a qualifying occurrence." *Id.* at ¶ 9. Accordingly, Goodyear was entitled to "seek full coverage for its claims from any single policy, up to that policy's coverage limits, out of the group of policies that ha[d] been triggered." *Id.* at ¶ 6. The court held that "when a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers 'all sums' incurred as damages 'during the policy period,' subject to that policy's limit of coverage." *Id.* at ¶ 11. The court also noted that if one policy did not cover Goodyear's entire claim at a given site, then it could pursue coverage under another triggered policy from either a primary or an excess insurer. *Id.* at ¶ 12.

{¶ 11} In *Park-Ohio*, we reaffirmed the all-sums allocation method adopted in *Goodyear* and applied it in a case involving asbestos-related injuries. *Park-Ohio* at ¶ 2-3. We stated that "*Goodyear* created an equitable approach to the unique situation surrounding the allocation of liability in progressive-injury cases * * *." *Id.* at ¶ 17.

**National Union's Argument**

{¶ 12} National Union counters that *Goodyear* is inapplicable because the policy here refers to "those sums"—not "all sums." Further, National Union argues that *Goodyear* applies only to situations in which the injury is continuous and indivisible, such as in many asbestos-exposure and environmental-pollution claims. National Union argues that the harm in this case was discrete and therefore actual or pro rata allocation is appropriate. Specifically, according to National Union, the

allegedly defective resin caused "known or knowable damage in each year between 2001 and 2008," "not indivisible injury similar to the long-term pollution damage in *Goodyear*."

**Analysis**

{¶ 13} The immediate question before the court is whether contract language providing coverage for "those sums" should be treated like contract language providing coverage for "all sums." We agree that generally, "those sums" may indicate a subset of "all sums." However, we have long assumed that the insurer, as the drafter of the policy, is in a stronger bargaining position than the insured, and therefore, we construe contractual ambiguities in favor of the insured. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 34. Consequently, we refuse to engage in a hypertechnical grammar analysis to determine whether the phrase "those sums" is always more limited than "all sums" and would always lead to a different allocation. As with any contract, insurance policies should be interpreted as written, and the meaning of the phrase "those sums" depends on the context of each policy and each case. We decline to set a bright-line rule based merely on a party's use of the word "those" instead of "all."

{¶ 14} In order to resolve the certified question, we are compelled to clarify the scope of our decision in *Goodyear*, particularly the distinguishing features of that analysis. In *Goodyear*, we stated, "The issue of allocation arises in situations involving long-term injury or damage, such as environmental cleanup claims where it is difficult to determine which insurer must bear the loss." *Goodyear*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 5. As we will discuss below, this case does not appear to involve long-term or progressive injury or property damage and therefore the type of allocation provided for in *Goodyear* is unnecessary.

{¶ 15} In *Goodyear*, we relied heavily on *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034 (D.C.Cir.1981), which concerned liability coverage for a manufacturer of insulation products that contained asbestos. The *Keene* court

identified a three-step analysis for determining whether an insurer has a coverage duty: "first, the trigger of coverage under the policies; second, the extent of coverage once a policy is triggered; and third, the allocation of liability among insurers if more than one policy is triggered." *Id.* at 1042. The key factor in *Keene* was that no single event triggered coverage. Instead, in an asbestos case, coverage could be triggered by inhalation exposure (inhalation of asbestos dust), exposure in residence (injury caused by asbestos fibers that become lodged in the lungs), and manifestation (when a disease caused by asbestos exposure becomes recognizable). *Id.* at 1047. Because there were multiple points in time that could trigger coverage, the court recognized that "only part of the disease will have developed during any single policy period," *id.*, and thus it was necessary to determine how liability should be allocated among all the triggered policies, *id.* at 1047-1050.

{¶ 16} We adopted *Keene's* allocation analysis in *Goodyear* and affirmed it in *Park-Ohio*. In *Goodyear*, we held that "when a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers 'all sums' incurred as damages 'during the policy period,' subject to that policy's limit of coverage." *Goodyear* at ¶ 11. Similarly, in *Park-Ohio*, we stated that when "loss or injury is caused over a period of time and multiple insurance policies cover that time frame," an all-sums allocation was applicable. *Park-Ohio*, 126 Ohio St.3d 98, 2010-Ohio-2745, 930 N.E.2d 800, at ¶ 1. But both of those cases involved ongoing, continuous exposure, which we have described as "progressive injury," *see id.* In *Goodyear*, waste disposed at landfills over a long period migrated, causing widespread environmental pollution. In *Park-Ohio*, asbestos dust caused continuous progressive injury like the court described in *Keene*.

{¶ 17} Here, however, National Union has alleged that the harm is discrete, not ongoing and continuous. In other words, the policy coverage is triggered at a

single, discernable point in time. Lubrizol makes the assertion that the claims involve "long tail property damage" but does not offer persuasive arguments to support the idea that a garden-variety product defect creates the same kind of continuous progressive harm that occurred in *Goodyear* and *Park-Ohio*. Lubrizol argues that the "divisibility of harm is outside of the scope of the certified question," but we disagree. However, we leave open the possibility that Lubrizol could marshal more evidence before the trial court to establish this as a progressive-injury case.

{¶ 18} But, even if Lubrizol's assertions are true, we would conclude that allocation under *Goodyear* is unnecessary. As National Union states, the time of damage is known or knowable. For example, it should be ascertainable how much resin was produced on a given date, how much resin was sold to IPEX, which lots of Kitec plumbing were produced on certain dates, when the Kitec plumbing was sold and installed, and when it failed. Under these circumstances, the operative contract language is not the reference to policy coverage for "those sums" but rather to injury or damage "that takes place during the Policy Period."

{¶ 19} For the limited purpose of resolving the certified question, we conclude that there is no reason to allocate liability across multiple insurers and policy periods if the injury or damage for which liability coverage is sought occurred at a discernible time. In that circumstance, the insurer who provided coverage for that time period should be liable, to the extent of its coverage, for the claim. As alleged by National Union, the facts here are distinguishable from *Goodyear*, *Park-Ohio*, and *Keene*, in which there was an "injurious process that beg[an] with an initial exposure and end[ed] with manifestation of disease" but that continued to develop injury at all the points in between. *Keene*, 667 F.2d 1034 at 1047.

**Conclusion**

{¶ 20} Based on the contract and the facts alleged in this case, we answer the certified state-law question in the negative.

So answered.

FRENCH, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY and FISCHER, JJ.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 21} I would answer the certified question with an unqualified no.

{¶ 22} The certified question is "whether an insured is permitted to seek full and complete indemnity, under a single policy providing coverage for 'those sums' that the insured becomes legally obligated to pay because of property damage that takes place during the policy period, when the property damage occurred over multiple policy periods."

{¶ 23} When a contract provision says that an insurer is required to pay only "those sums" that arise from damage that occurs "during the policy period," that is all the insurer may be required to pay. The insurance provision at issue here unambiguously so provides. Thus, Lubrizol Advanced Materials, Inc., is not entitled to allocate to a single policy period defense and indemnity costs that resulted from injuries that occurred over multiple policy periods.

{¶ 24} Because the majority qualifies its answer to the certified question, I concur in judgment only.

{¶ 25} I note further that because a plain reading of the policy language set forth in the certified question answers that question, there is no need for us today to address the continuing vitality of *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, and *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries*, 126 Ohio St.3d 98, 2010-Ohio-2745, 930

N.E.2d 800, cases that interpreted different policy language. Nor do we have occasion to consider, under the instant policy language, the proper method to apportion liability for long-tail claims in which an indivisible injury occurs over multiple policy periods.

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

_____

Julie A. Harris and Nada G. Faddoul, for petitioner.

Crowell & Moring, L.L.P., and Laura A. Foggan; Lewis, Brisbois, Bisgaard & Smith, Thomas P. Mannion, and Bradley J. Barmen; and Nicolaides Fink Thorpe Michaelides Sullivan, L.L.P., Jonathan T. Viner, Ian A. Cooper, Joel M. Graczyk, and Rebecca E. Bennett, for respondent National Union Fire Insurance Company of Pittsburgh, PA.

Brouse McDowell, Paul A. Rose, and Jodi D. Spencer-Johnson, in support of petitioner for amici curiae Ohio Chemistry Technology Council, Cleveland-Cliffs, Inc., Eaton Corporation, Goodrich Corporation, MTD Products, Inc., Materion Corporation, PolyOne Corporation, RPM International, Inc., Goodyear Tire & Rubber Company, Interlake Steamship Company, Lincoln Electric Company, and Sherwin-Williams Company.

Plunkett Cooney and Patrick E. Winters, in support of respondent National Union Fire Insurance Company of Pittsburgh, PA. for amicus curiae Complex Insurance Claims Litigation Association.

Collins, Roche, Utley & Garner, Richard M. Garner, and James S. Kresge, in support of respondent National Union Fire Insurance Company of Pittsburgh, PA. for amicus curiae Ohio Insurance Institute.

_____